UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OUMOU BAH, AS ADMINISTRATOR OF THE
ESTATE OF MOHAMMED BAH,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

Defendants.

## MEMORANDUM OF LAW

*JEFFREY D. FRIEDLANDER*
*Acting Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*et al.*
*100 Church Street, Room 3-162*
*New York, N.Y.  10007*

*Of Counsel     BARRY MYRVOLD*
*ASHLEY GARMAN*
*Tel:  (212) 356-2324*
*Matter No. 2013-045609*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ........................................................................................................................ 1

THE RULE 12(B)(6) STANDARD............................................................................ 3

ARGUMENT

POINT I

PLAINTIFF CANNOT MAINTAIN ANY OF HER
SECTION 1983 CLAIMS AGAINST
GALLITELLI, JOHNSON, STANTON AND
SANTANA BECAUSE SHE HAS FAILED TO
ALLEGE THAT THEY WERE PERSONALLY
INVOLVED IN ANY OF THE ALLEGED
VIOLATIONS OF DECEDENT'S
CONSTITUTIONAL RIGHTS ...................................................................5

A. Plaintiff Cannot Maintain Any of Her Section
1983 Claims Alleged in The First Claim For
Relief As Against Gallitelli, Johnson, Stanton
and Santana ...................................................................................6

B. Plaintiff Cannot Maintain Her Claim For
Supervisory Liability Under Section 1983 As
Against Gallitelli.........................................................................7

POINT II

PLAINTIFF CANNOT MAINTAIN HER CLAIM
FOR UNLAWFUL ENTRY UNDER SECTION
1983 AGAINST ANY OF THE INDIVIDUAL
DEFENDANTS ...........................................................................................9

A. Entry Into Decedent's Apartment, If It
Occurred, Would Have Been Lawful Pursuant
to the Emergency Aid Doctrine ...............................................10

**Page**

    B.  Alternatively, the Individual Defendants Are
Entitled to Qualified Immunity With Respect to
the Alleged Entry ................................................................................13

POINT III

PLAINTIFF CANNOT MAINTAIN HER CLAIM
FOR VIOLATION OF THE EQUAL
PROTECTION CLAUSE OF THE FOURTEENTH
AMENDMENT AGAINST ANY OF THE
DEFENDANTS ......................................................................................14

POINT IV

PLAINTIFF'S STATE LAW CLAIMS AGAINST
THE INDIVIDUAL DEFENDANTS MUST BE
DISMISSED BECAUSE PLAINTIFF FAILED TO
COMPLY WITH N.Y. G.M.L. § 50-e.....................................................16

POINT V

PLAINTIFF MAY NOT MAINTAIN A
NEGLIGENCE CLAIM AGAINST THE
INDIVIDUAL DEFENDANTS FOR THEIR
INTENTIONAL ACTS ...........................................................................17

POINT VI

THE NEGLIGENT TRAINING AND
SUPERVISION CLAIMS ARE MERITLESS.........................................22

Conclusion ............................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

Anthony v. City of New York,
    339 F.3d 129 (2d Cir. 2003)........................................................................... 10, 12

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................................................... 3

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007).................................................................................. 3

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)........................................................................................... 3

Bellamy v. Mount Vernon Hosp.,
    No. 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141 (S.D.N.Y. June 26, 2009)........... 7

Brandon v. City of New York,
    705 F.Supp.2d 261 (S.D.N.Y. 2010).................................................................... 6

Brigham City, Utah v. Stuart,
    547 U.S. 398 (2006)......................................................................................... 10

Brisbane v. Milano,
    443 Fed. Appx. 593 (2d. Cir. 2011).................................................................... 15

Brown v. Metro Transp. Auth.,
    717 F. Supp. 257 (S.D.N.Y. 1989)..................................................................... 16

Busch v. City of New York,
    No. 00 CV 5211, 2003 U.S. Dist. LEXIS 27571 (E.D.N.Y. Sept. 11, 2003) .......... 18

Cerbelli v. City of New York,
    No. 99 Civ. 6846 (ARR) (RML), 2008 U.S. Dist. LEXIS 109341
    (E.D.N.Y. Sept. 8, 2008)..................................................................................... 8

Chamberlain v. City of White Plains,
    No. 12 Civ. 5142 (CS), 2013 U.S. Dist. LEXIS 174745
    (S.D.N.Y. Dec. 10, 2013)............................................................... 2, 10, 12, 13

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)............................................................................... 2

**Cases**                                                                                                    **Pages**

Conley v. Gibson,
    355 U.S. 41 (1957)................................................................................ 3

De Michele v. Tierney,
    No. 09 Civ. 9334 (PGG), Dkt No. 146, <u>Slip Op.</u> (S.D.N.Y. Dec. 14, 2012)......................... 17

Dineen v. Stramka,
    228 F. Supp. 2d 447 (S.D.N.Y. 2002).............................................................. 18

Farrell v. Burke,
    449 F.3d 470 (2d Cir. 2006)................................................................... 5-6

Gagliardi v. Village of Pawling,
    18 F.3d 188 (2d Cir. 1994).................................................................... 16

Glowczenski v. Taser Int'l Inc.,
    No. CV04-4052 (WDW), 2010 U.S. Dist. LEXIS 47129 (E.D.N.Y. May 13, 2010) ............ 18

Hardy v. City of New York,
    No. 12 Civ. 17 (RJS), 2013 U.S. Dist. LEXIS 100665 (S.D.N.Y. July 8, 2013) ..................... 7

Higazy v. Templeton,
    505 F.3d 161 (2d Cir. 2007)................................................................... 13

Holloman v. City of New York,
    No. 11 Civ. 1624 (AKH), 2012 U.S. Dist. LEXIS 187736 (S.D.N.Y. June 7, 2012).............. 17

Jackson v. City of New York,
    No. 10-cv-2530 (WFK)(SMG), 2013 U.S. Dist. LEXIS 55186
    (E.D.N.Y. Apr. 16, 2013)...................................................................... 17

Jenkins v. City of New York,
    No. 91 Civ. 3539 (RLC), 1992 U.S. Dist. LEXIS 8279 (S.D.N.Y. Jun. 15, 1992) .......... 19, 20

Kerman v. City of New York,
    261 F.3d 229 (2d. Cir. 2001).................................................................. 14

Kyllo v. United States,
    533 U.S. 27 (2001)............................................................................ 10

Liang v. City of New York, et al.,
    No. 10-cv-3089 (ENV) (VVP), 2013 U.S. Dist. LEXIS 136795 (E.D.N.Y. 2013).................. 16

Lisa's Party City, Inc. v. Town of Henrietta,
    185 F.3d 12 (2d Cir. 1999)................................................................... 15

**Cases**                                                                    **Page**

Massey v. Starbucks Corp.,
   2004 U.S. Dist. LEXIS 12993 (S.D.N.Y. July 12, 2004) ....................................... 22

Mitchell v. County of Nassau,
   No. CV-05-4957 (SJF)(WDW), 2007 U.S. Dist. LEXIS 38711,
   (E.D.N.Y. May 24, 2007) ........................................................................................ 19

Mazzferro v. Albany Motel Enterprises, Inc.,
   127 A.D.2d 374, 515 N.Y.S.2d 631 (N.Y. App. Div. 3d Dep't 1987) ................... 18

Monell v. Dep't of Soc. Servs.,
   436 U.S. 658 (1978) ................................................................................................... 3

Newton v. City of New York,
   681 F. Supp. 2d 473 (S.D.N.Y. 2010) ................................................................... 22

Oliver v. Cuttler,
   968 F. Supp. 83 (E.D.N.Y. 1997) .......................................................................... 18

Poe v. Leonard,
   282 F.3d 123 (2d Cir. 2002) ..................................................................................... 9

Schmidt v. Bishop,
   779 F. Supp. 321 (S.D.N.Y. 1991) ........................................................................ 19

Sforza v. City of New York, et al.,
   No. 07 Civ. 6122, 2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. Mar. 31, 2009) ........... 5

Sha v. New York City Police Department Twentieth Precinct,
   No. 03 Civ. 5273 (DAB) (GWG), 2005 U.S. Dist. LEXIS 6505
   (S.D.N.Y. Apr. 18, 2005) ........................................................................................ 12

Stevens v. City of New York,
   No. 10 Civ. 2172 (KBF) (JLC), 2012 U.S. Dist. LEXIS 165936
   (S.D.N.Y. Nov. 14, 2012) ....................................................................................... 17

Taravella v. Town of Wolcott,
   599 F.3d 129 (2d Cir. 2010) ................................................................................... 13

Tierney v. Davidson,
   133 F.3d 189 (2d Cir. 1988) ............................................................................. 10, 17

United National Insurance Co. v. Tunnel, Inc.,
   988 F.2d 351 (2d Cir. 1993) ................................................................................... 18

**Cases**                                                                                                    **Page**

United States v. Simmons,
   661 F.3d 151, 157 (2d Cir. 2011)............................................................................ 10

Vilkhu v. City of New York,
   No. 06-CV-2095 (CPS) (JO), 2008 U.S. Dist. LEXIS 36454 (E.D.N.Y. May 5, 2008) ......... 18

Yajure v. DiMarzo,
   130 F. Supp. 2d 568 (S.D.N.Y. 2001)..................................................................... 15

**Statutes**

42 U.S.C. §1983 .......................................................................................... 1, 3, 5, 6, 7, 9, 21

Fed. R. Civ. P. 8(a)(2)...................................................................................... 3

Fed. R. Civ. P. 12(b)(6)................................................................................ 1, 3, 16, 23

N.Y. Gen. Mun. Law § 50-e .......................................................................... 16

U.S. Const. Amend. IV .................................................................................. 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

OUMOU BAH, AS ADMINISTRATOR OF THE
ESTATE OF MOHAMMED BAH,

                                    Plaintiff,      1:13-CV-06690-PKC-KNF

               -against-                 MEMORANDUM OF LAW

THE CITY OF NEW YORK, ET AL.,

                                    Defendant.

------------------------------------------------------------------------ x

### Preliminary Statement

        Defendants The City of New York, Michael Licitra, Joseph McCormack, Robert Gallitelli, Vincent Johnson, Brian Stanton and Esmeralda Santana respectfully move under Fed. R. Civ. P. 12(b)(6) to plaintiff's (1) 42 U.S.C. § 1983 claims against Galitelli, Johnson, Stanton and Santana because she has failed to allege they were personally involved in the alleged violations of plaintiff's decedent's constitutional rights, (2) the § 1983 supervisory liability claim against Gallitelli, (3) the § 1983 unlawful entry claim against the individual defendants, (4) the § 1983 equal protection claim against the individual defendants, (5) the state law claims against the individual defendants for failure to serve a notice of claim naming them, (6) the state law negligence claim against the individual defendants for their intentional acts, and (7) the state law negligent training and supervision claims.

### Facts

        Plaintiff Oumou Bah brings this action as administrator of the estate of her brother, Mohamed Bah, who was fatally injured in a September 25, 2012, incident involving

several New York City police officers.   The amended complaint alleges, <u>inter alia</u>, that in response to a 911 call by Mohamed's mother, Mrs. Bah, who was worried that her son was depressed and in need of medical attention, numerous police officers unlawfully entered the decedent's apartment, tasered him, fired a bean bag and shot him several times, ultimately resulting in his death.   Amended Complaint, dated December 9, 2013, ECF No. 19 ("Comp."), ¶¶ 25-66[1].   The complaint alleges that four officers from the 26th Precinct, Lt. Robert Gallitelli, and P.O.'s Vincent Johnson, Brian Stanton and Esmeralda Santana, responded to a 10-54 (ambulance case) Emotionally Disturbed Person ("EDP"), and were the first officers on the scene at Mohamed's apartment building at 113 Morningside Avenue in Manhattan.   Comp., ¶¶ 15-18, 26. Upon their arrival, they spoke with Mrs. Bah, went upstairs and knocked on the door, attempted to force their way into the apartment, had a brief conversation with Mohamed in which he refused their assistance, told them to go away and then closed and locked the door.   Comp., ¶¶ 28, 29.   They refused to allow Mrs. Bah to speak with her son; and then called for Emergency Service Unit ("ESU") personnel.   Comp., ¶¶ 28-31.   Mohamed was armed with a knife.[2]

The complaint alleges that five ESU officers, Lt. Michael Licitra, Sgt. Joseph McCormack, and Detectives Edwin Mateo, Andrew Kress and Michael Green arrived Mohamed's apartment building.   Comp., ¶¶ 10-14, 37. The complaint alleges that "[d]uring the hour long siege, the ESU officers yelled at Mohamed, taunted him, screamed that they were not

---

[1]  For the Court's convenience, a copy of the complaint is attached to the Declaration of Barry Myrvold, dated January 24, 2014 ("Myrvold Dec."), Exhibit A.

[2]   Plaintiff's complaint references the radio transmission, Comp., ¶ 37; thus, for purposes of Rule 12(b)(6), the complaint is deemed to include these transmissions.   <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002); <u>Chamberlain v. City of White Plains</u>, No. 12 Civ. 5142 (CS), 2013 U.S. Dist. LEXIS 174745, *16-21 (S.D.N.Y. Dec. 10, 2013) (incorporating Life Aid audio recordings and the Taser video recordings).   The complaint alleges that the initial radio request for ESU did not state that the EDP was armed with a knife, but a transmission two

leaving until he came outside, and repeatedly kicked his door," Comp., ¶ 47, that they blocked and then removed the door's peephole, Comp., ¶ 48-49, used a hydraulic device to open his door, and then entered the apartment, shot plaintiff with tasers, shot plaintiff with a rubber pellet, and fatally shot him.  Comp., ¶¶ 50-55.

The Amended Complaint alleges claims for relief under 42 U.S.C. § 1983 against the individual defendants[3] for:  (1) unreasonable search and seizure, and unlawful entry under the Fourth Amendment, Comp., ¶¶ 97, 99; (2) deprivation of right to equal protection under the Fourteenth Amendment, Comp., ¶ 98, and (3) excessive force, Comp., ¶ 99; against Gallitelli and Licitra for supervisory liability, Comp., ¶¶ 114-115, and; against the City under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978).  Comp., ¶¶ 101-112.  The Amended Complaint also alleges state law claims for (1) assault and battery against Kress, Mateo, Green McCormack and the City, Comp., ¶¶ 126-131, and (2) negligence against all defendants.  Comp., ¶¶ 133-140.

## THE RULE 12(B)(6) STANDARD

Rule 8(a)(2), Fed. R. Civ. P., requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (ellipsis in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient "'to raise a right to relief above the speculative level.'" <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads

---

minutes later stated "EDP is alone in apt. 5D – has knife."  See sprint report (at 1854), Myrvold Dec., Exhibit B.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id. Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570 (citations and quotations omitted). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678.

The Supreme Court in Iqbal set forth a "two-pronged" approach for analyzing a motion to dismiss. Id. at 679-80. First, a court should "indentify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." Id. In making its evaluation, a court must undertake a "context-specific task" that requires it to draw on its judicial experience and common sense. Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint must be dismissed. Id. at 678-79 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss").

---

**ARGUMENT**

**POINT I**

**PLAINTIFF CANNOT MAINTAIN ANY OF HER SECTION 1983 CLAIMS AGAINST GALLITELLI, JOHNSON, STANTON AND SANTANA BECAUSE SHE HAS FAILED TO ALLEGE THAT THEY WERE PERSONALLY INVOLVED IN ANY OF THE ALLEGED VIOLATIONS OF DECEDENT'S CONSTITUTIONAL RIGHTS**

In the First Claim for Relief, plaintiff purports to bring claims against the individual defendants pursuant to 42 U.S.C. § 1983 for violations of decedent's constitutional rights.  Specifically, plaintiff alleges violations of decedent's due process, equal protection and "bodily integrity" rights under the Fourteenth Amendment, and of his Fourth Amendment rights against unreasonable searches and seizures, excessive force and unlawful entry.  Comp., ¶¶ 93-99.  Additionally, in the Third Claim for Relief, plaintiff purports to state a claim against Gallitelli and Licitra[4] for supervisory liability under § 1983.  However, as a preliminary matter, plaintiff cannot maintain any of these claims as against defendants Gallitelli, Johnson, Santana and Stanton because she has failed to allege that they were personally involved in any of these alleged violations.[5]  Accordingly, because "[i]t is 'well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983,'"  Sforza v. City of New York, et al., No. 07 Civ. 6122 (DLC), 2009 U.S. Dist. LEXIS 27358 at *19 (S.D.N.Y. Mar. 31, 2009) (quoting Farrell v. Burke, 449 F.3d 470,

---

[4]  For the purposes of this Motion, defendants set aside (but do not concede) the issue of whether plaintiff has sufficiently pled a supervisory liability claim as against Licitra.
[5]  Nor can plaintiff maintain her unlawful entry or equal protection claims as against <u>any</u> of the individual defendants, for the reasons set forth in Points II and III of this Memorandum, respectively.

484 (2d Cir. 2006) (citation omitted)), plaintiff's § 1983 claims should be dismissed as against each of these defendants.

### A.     Plaintiff Cannot Maintain Any of Her Section 1983 Claims Alleged in The First Claim For Relief As Against Gallitelli, Johnson, Stanton and Santana

Plaintiff cannot maintain any of the claims contained in the First Claim for Relief as against the 26th Precinct officers, Gallitelli, Johnson, Stanton and Santana because she has not alleged that those defendants ever entered decedent's apartment or used force against him, nor does she attribute to them any other conduct amounting to a violation of decedent's constitutional rights.  According to the complaint, the 26th Precinct officers were the first officers to arrive on the scene, and, upon their arrival, spoke with Mrs. Bah.  Comp., ¶¶ 26-27.  The Complaint alleges that they then went upstairs to decedent's apartment and knocked on the door; attempted to force their way into the apartment; had a brief conversation with decedent in which he refused their assistance, told them to go away and then closed and locked the door; refused to allow Mrs. Bah to speak with her son; and then called for ESU personnel.  Comp., ¶¶ 28-31.  Beyond that, there are no further allegations in the complaint regarding Gallitelli, Johnson, Stanton or Santana's actions or whereabouts.  Indeed, plaintiff has made no factual allegations indicating that, after decedent closed and locked the door, Gallitelli, Johnson, Stanton or Santana remained on the fifth floor outside decedent's apartment or even inside the building during the events that followed.  Significantly, though plaintiff alleges that the officers "attempted to force their way into the apartment," Comp., ¶ 29, she does not allege that they ever entered the apartment or used any force against decedent.  Plaintiff's failure to allege personal involvement in any of the alleged constitutional violations by Gallitelli, Johnson, Stanton and Santana is fatal to her § 1983 claims against them, (see, e.g. Brandon v. City of New York, 705 F.Supp.2d 261, 274-75 (S.D.N.Y. 2010)("[B]ecause neither [of the defendants] was involved in any of the post-

arrest conduct that led to [plaintiff's] prosecution…each lacks the requisite personal involvement to be liable pursuant to § 1983…")), which should therefore be dismissed.[6]

## B.   Plaintiff Cannot Maintain Her Claim For Supervisory Liability Under Section 1983 As Against Gallitelli

      Similarly, plaintiff cannot maintain a § 1983 supervisory liability claim as against Gallitelli because she has not pled facts that demonstrate that he had any personal involvement in the alleged violations of decedent's constitutional rights.  It is now  axiomatic that "[i]n a 1983 suit…the term 'supervisory liability' is a misnomer. . . . [E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  Iqbal, 556 U.S. at 677. Thus, to assert a claim against a supervisory defendant under §1983, a plaintiff must adduce facts demonstrating that defendant's personal involvement in the alleged constitutional deprivation and cannot base a claim simply on the supervisor's purported knowledge of a subordinate's unconstitutional conduct.  See  Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801 (SAS), 2009 U.S. Dist. LEXIS 54141, at *21 (S.D.N.Y. June 26, 2009); see also Hardy v. City of New York, No. 12 Civ. 17 (RJS), 2013 U.S. Dist. LEXIS 100665, at *14-15 (S.D.N.Y. July 8, 2013) (finding plaintiff's allegations that police sergeant "supervised" and "approved" allegedly false arrest and submission of false evidence insufficient to establish supervisory liability claim for purposes of Rule 12(c) motion; plaintiff pled no facts showing that sergeant supervised or approved anything, nor that sergeant instigated or directly participated in the alleged constitutional violations).

      Here, plaintiff alleges that Gallitelli was the 26th Precinct Platoon Commander and was in charge of the 26th Precinct police officers who initially responded to the scene,

---

[6]  Insofar as there are also no allegations that Licitra, himself, entered decedent's apartment or used any force, the § 1983 unlawful entry and excessive force claims should be dismissed as against him as well.

- 7 -

Comp., ¶ 15, who are identified in the complaint as Johnson, Stanton and Santana.  Comp., ¶ 26.
As set forth in part A above, plaintiff has not pled any facts demonstrating that Johnson, Stanton
and Santana – Gallitelli's subordinates – were personally involved in the alleged unlawful entry,
use of excessive force, or any other claimed constitutional violations.   Having pled no
deprivation of plaintiff's constitutional rights attributable to Johnson, Stanton, or Santana,
plaintiff has failed to support her conclusory allegation that Gallitelli's "failure to properly
supervise" those officers caused a violation of decedent's constitutional rights, or to otherwise
link his "perform[ance] of supervisory functions" at the scene to any constitutional violations.
Comp., ¶¶ 114, 116.

        The remaining allegations against Gallitelli consist of claims that he, as one of
two lieutenants at the scene, violated the NYPD EDP policy through various alleged failures to
act: failure to request an interpreter and to enlist Mrs. Bah's assistance, Comp., ¶ 32, failure to
maintain firearms control and to designate a shooter, Comp., ¶ 41, and failure to devise
appropriate plans and tactics and to notify Precinct Commander/Duty Captain.  Comp., ¶ 44.
However, even if these allegations were true – which defendants do not concede – they do not set
forth a claim against Gallitelli for supervisory liability.  First, any alleged failures to comply with
the NYPD EDP policy do not themselves amount to constitutional violations, because "local
agency-established policies [such as the NYPD EDP policy] do not establish constitutional
standards."  Cerbelli v. City of New York, No. 99 Civ. 6846 (ARR) (RML), 2008 U.S. Dist.
LEXIS 109341, at *37-38 (E.D.N.Y. Sept. 8, 2008) (rejecting supervisory liability claim based
on allegation that supervisory defendants "failed to establish fire arms control, as required by the
[NYPD] Patrol Guide"; to find supervisory officers liable for subordinates' alleged "sudden
breach of firearms control," particularly when supervisors "had no reason to believe that [their

subordinates] would use lethal force unreasonably against [decedent], would not only impermissibly enshrine NYPD practice within the Fourth Amendment, but would construe the Constitution to require police supervisors to make boilerplate recitations of manual policies during crisis situations for no other purpose than to avoid liability.") (citing <u>Poe v. Leonard</u>, 282 F.3d 123, 146 (2d Cir. 2002)).   Second, because plaintiff has not alleged any involvement by Johnson, Santana and Stanton in the alleged use of force against decedent (nor that they had any further interactions with decedent after they knocked on his door and were rebuffed), the complaint contains no facts from which to plausibly infer that Gallitelli's alleged failures to follow EDP policy amounted to a "failure to properly supervise" those officers which could conceivably have caused any violations of decedent's constitutional rights.

Accordingly, plaintiff has failed to establish that Gallitelli was personally involved in the alleged constitutional violations, and the § 1983 supervisory liability claim as against him should be dismissed.

## POINT II

### PLAINTIFF CANNOT MAINTAIN HER CLAIM FOR UNLAWFUL ENTRY UNDER SECTION 1983 AGAINST ANY OF THE INDIVIDUAL DEFENDANTS

Furthermore, plaintiff cannot maintain a § 1983 unlawful entry claim against any of the individual defendants because the alleged entry into decedent's apartment, if it indeed occurred (which defendants do not concede), would have been lawful under the "emergency aid" exception to the warrant requirement.   At a minimum, based on the facts as set forth in the Complaint, defendants are entitled to qualified immunity for any alleged entry into decedent's apartment.   Accordingly, plaintiff's unlawful entry claim should be dismissed.

**C.   Entry Into Decedent's Apartment, If It Occurred, Would Have Been Lawful Pursuant to the Emergency Aid Doctrine**

While the Fourth Amendment protects individuals against unreasonable searches and seizures (see U.S. Const. Amend. IV), an entry into the home is reasonable, and therefore lawful, when it is conducted pursuant to a warrant or meets an exception to the warrant requirement.  Anthony v. City of New York, 339 F.3d 129, 135 (2d Cir. 2003) (citing Kyllo v. United States, 533 U.S. 27, 31 (2001)).  One such exception, pertinent here, is the "emergency aid" doctrine, pursuant to which "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."  Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006).  See also Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1988) ("police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance.") (internal quotations and citation omitted).

To determine whether the emergency aid doctrine applies in a specific situation, courts use an objective standard and examine the "totality of the circumstances confronting law enforcement agents in the particular case" to determine whether the facts known by the officers at the time of entry "would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action."  Chamberlain v. City of White Plains, No. 12 Civ. 5142 (CS), 2013 U.S. Dist. LEXIS 174745, at *24 (S.D.N.Y. Dec. 10, 2013) (citing United States v. Simmons, 661 F.3d 151, 157 (2d Cir. 2011)) (quotation marks omitted).  See also Brigham, 547 U.S. at 405-406 (warrantless entry into a residence was lawful because officers had an objectively reasonable basis for believing that an injured person inside might need help and that a violent fight within the residence was just beginning; officers' subjective motives for entering, assuming they could be determined, were irrelevant).

- 10 -

Here, the facts as alleged in the complaint establish that any entry by the ESU defendants into decedent's apartment would have been objectively reasonable in order for them to render assistance to decedent.   Plaintiff alleges that on the date of the incident, decedent's mother, Mrs. Hawa Bah, called 911 and told the operator that she was concerned that decedent was "having a mental health crisis" and that he needed to be transported to the hospital.  Comp., ¶ 25.   Plaintiff alleges in her complaint that over the few months before the incident, the decedent was "acting erratically", "had lost weight", and "exhibited indications that he was in an emotional or mental health crisis." Comp., ¶ 22.  Based on Mrs. Bah's report, the call went over the police radio as a "10-54" (an ambulance case) involving an "EDP" – a person who appears mentally ill.  Comp.,  ¶ 26.  When Gallitelli, Johnson, Stanton and Santana arrived in response to the 10-54, Mrs. Bah told them that decedent was alone in his apartment, appeared to be depressed and having a "mental health crisis" and was in need of medical attention, and that she wanted an ambulance to take him to the hospital.  Comp., ¶ 27.  According to the Complaint, when those officers went to decedent's apartment and knocked on the door, decedent refused their assistance and locked himself inside his apartment. Comp., ¶ 29.  The Complaint further alleges that ESU personnel were then called to the scene, and they were informed by radio that the decedent was armed with a knife.  Comp., ¶ 37; Myrvold Dec., Ex. B.  The responding personnel – Licitra, McCormack, Kress, Mateo and Green – waited outside decedent's apartment for an hour, during which time decedent remained locked inside.  Comp., ¶¶ 31, 37, 47.

Based on these facts, a reasonable, experienced officer in the position of the the ESU officers would be justified in believing that entry into decedent's apartment was necessary in order to confirm whether decedent posed a threat to himself or others or – as his mother allegedly repeatedly insisted – was in need of medical attention.  Courts in this Circuit have

found warrantless entries lawful where, as here, law enforcement received credible third-party information that an individual inside the residence was in distress and in need of assistance.  See, e.g., Anthony, 339 F.3d  at 135-37 (finding reasonable warrantless entry into apartment where plaintiff was staying where police responded to 911 call from the apartment in which female caller reported she was being attacked by her husband who had a knife and a gun); Chamberlain, 2013 U.S. Dist. LEXIS 174745, at *24-27 (warrantless entry into decedent's apartment was reasonable where, inter alia, decedent's "Life Aid" monitoring device had sent a medical alert to which decedent never responded, there was a history of EDP calls to decedent's apartment, officers could hear decedent speaking either to himself or to other people inside the apartment, decedent refused to allow admittance to officers and medical personnel and they could not otherwise visually confirm that no one inside the apartment was need of medical attention); Sha v. New York City Police Department Twentieth Precinct, No. 03 Civ. 5273 (DAB) (GWG), 2005 U.S. Dist. LEXIS 6505, at *13-17 (S.D.N.Y. Apr. 18, 2005) (warrantless entry reasonable where police responded to 911 call from plaintiff's friend, who reported that she had been on the phone with plaintiff when plaintiff suddenly dropped the phone, that she tried to call back and received a busy signal and that plaintiff had a history of brain injury and seizures) ("There is no question that a call to a 911 operator can provide the exigent circumstances necessary to justify a warrantless entry into an individual's residence….[T]he call from [plaintiff's friend] provided sufficient indicia of reliability for the police to believe that a medical emergency existed."). Here, too, based on Mrs. Bah's reports regarding her son's mental state, the need for medical attention, the information that he was armed with a knife and his refusal to open the door for an hour, defendants could reasonably have believed that it was necessary to enter decedent's

apartment in order to either provide him aid or confirm he was not in need of it.  Accordingly, plaintiff's unlawful entry claim fails as a matter of law and should be dismissed.

**D.     Alternatively, the Individual Defendants Are Entitled to Qualified Immunity With Respect to the Alleged Entry**

At a minimum, the individual defendants are entitled to qualified immunity with respect to the alleged entry.  The doctrine of qualified immunity shields government officials from civil liability "as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (internal quotations and citation omitted).  Moreover, "'even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful.'"  Id., at 134 (quoting Higazy v. Templeton, 505 F.3d 161, 169-70 (2d Cir. 2007)).

Chamberlain is instructive here.   In that case, police officers responded to decedent's apartment after decedent's "Life Aid" medical alert device had been triggered, automatically initiating a two-way communication between decedent and personnel at the Life Aid monitoring center.  When decedent did not respond to the Life Aid monitoring center personnel but could be heard speaking threateningly in the background, the Life Aid personnel called the police.  Because there had been a history of EDP calls to decedent's apartment, the officers who responded to the call were advised that they were possibly dealing with an EDP situation.  When the officers arrived at decedent's apartment (along with emergency medical personnel) and knocked on the door, decedent refused to allow them to enter, and, for over an hour could be heard speaking threateningly inside, either to himself or to another individual, and it was eventually discovered that he had armed himself with a knife.  A tactical police unit was

called, and eventually the tactical officers cut the lock to decedent's door and entered the apartment, where decedent stood in his underwear holding a knife.  Though the district court found that the warrantless entry into decedent's apartment was lawful in light of the information known to the officers at the time, the court held that if even the entry had <u>not</u> been lawful, the officers would nonetheless have been entitled to qualified immunity because "it would not be unreasonable for an objective officer to conclude that there was a risk that an occupant of the apartment needed police or medical assistance that justified the officers' entry into the apartment."  <u>Chamberlain</u>, 2013 U.S. Dist. LEXIS 174745, at *27-28 (citing <u>Kerman v. City of New York</u>, 261 F.3d 229 (2d. Cir. 2001) ("A forced entry into the apartment of an emotionally disturbed man possibly wielding a [weapon] cannot be dealt with by half measures.  Based on the information in the call, the police did not act unreasonably in choosing to enter and immobilize [the man] as quickly and safely as possible.") (finding that entry violated the Fourth Amendment but that officers were entitled to qualified immunity)).

Here, based on the facts as alleged in the complaint, it was objectively reasonable for the individual defendants to believe that entry into decedent's apartment was lawful, and they are therefore, at a minimum, entitled to qualified immunity on plaintiff's unlawful entry claim.

## POINT III

**PLAINTIFF CANNOT MAINTAIN HER CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AGAINST ANY OF THE DEFENDANTS**

In the First Claim for Relief, plaintiff alleges that the individual defendants, through their actions as alleged in the complaint, "also deprived Mohamed of his right to equal protection of the laws in violation of the Fourteenth Amendment."  Comp., ¶ 98.  However, the

complaint contains no factual allegations in support of this bald assertion, and this claim, too, should be dismissed.

   To make out an Equal Protection Clause violation here, plaintiff must prove that: "(1) [decedent], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001) (citing Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999)).  Additionally, "[u]se of an impermissible consideration (such as race) must have been intentional, not merely negligent." Brisbane v. Milano, 443 Fed. Appx. 593, 594 (2d. Cir. 2011).  The factual allegations in plaintiff's complaint fail to support a reasonable inference of such improperly selective treatment.  First, plaintiff fails to allege that decedent was a member of a protected class. Moreover, even if plaintiff had done so, the complaint contains no factual allegations that defendants' actions were motivated by any improper purpose, whether it decedent's membership in a protected class, an intent to punish the exercise of rights by decedent or malicious intent to injure him.  Plaintiff's allegations regarding the race of some of the individual defendants, Comp., ¶¶ 10-14, and that the ESU officers could hear decedent praying inside his apartment, Comp., ¶ 50 – even if true, which defendants do not concede – are simply insufficient to raise an inference that the defendants intentionally based their conduct on "impermissible considerations" as required to state a viable Equal Protection claim.  See Brisbane, 443 Fed. Appx. at 594 (granting defendants' motion to dismiss Equal Protection claims in connection with plaintiffs' arrests; allegations that plaintiffs were black and that their counterparts who were not arrested were white and that police reports described suspects and victims by their race and sex were

- 15 -

insufficient to state a plausible claim of racially discriminatory intent); <u>see also</u> <u>Liang v. City of New York, et al.</u>, No. 10-cv-3089 (ENV) (VVP), 2013 U.S. Dist. LEXIS 136795, at *35-36 (E.D.N.Y. 2013)  (dismissing Equal Protection claim based on alleged gender discrimination) ("Without even a whiff of facts other than the gender difference between [plaintiff-arrestee] and [complaining victim] all that is offered are naked assertions of discrimination....  They cannot survive a 12(b)(6) motion.") (citations omitted).

Finally, plaintiff has failed to plead the existence of any similarly situated persons who were treated differently from decedent.[7]  Because "it is axiomatic that a plaintiff [bringing an Equal Protection claim] must allege that similarly situated persons have been treated differently," (<u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 193 (2d Cir. 1994)) plaintiff's failure to do so is fatal to her claim.  Accordingly, plaintiff's Equal Protection claim should be dismissed.

## POINT IV

**PLAINTIFF'S STATE LAW CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO COMPLY WITH N.Y. G.M.L. § 50-E**

Plaintiff's state law negligence claims against the individual defendants are barred because plaintiff failed to name them in her notice of claim, as required by New York General Municipal Law § 50-e.  See the Notice of Claim attached Myrvold Dec., Exhibit C. A notice of claim is required prior to initiating any action in tort against the City or its employees.  <u>Brown v. Metro Transp. Auth.</u>, 717 F. Supp. 257, 259 (S.D.N.Y. 1989) ("[A] notice of claim . . . is a

---

[7]  Indeed, in support of the allegation of "a long series" of similar incidents involving police response to EDPs, Comp., ¶ 61, plaintiff cites six purported examples of emotionally disturbed individuals who she claims received <u>similar</u> (allegedly improper) treatment to that of decedent. Comp., ¶¶ 63-68.

mandatory condition precedent to the bringing of a tort claim against a public corporation, or any of its officers, appointees, or employees."). "[C]ourts in the Second Circuit, relying on New York law, strictly construe Section 50-e to forbid a Plaintiff from fil[ing] a notice of claim naming a municipal entity and then commenc[ing] an action against a roster of individual municipal employees." Jackson v. City of New York, No. 10-cv-2530 (WFK)(SMG), 2013 U.S. Dist. LEXIS 55186,  at *52-55 (E.D.N.Y. Apr. 16, 2013) (citations and internal quotes omitted).

Failure to name specific individuals in a notice of claim necessitates the dismissal of all state law claims against them.   Stevens v. City of New York, No. 10 Civ. 2172 (KBF)(JLC), 2012 U.S. Dist. LEXIS 165936 at *11-15 (S.D.N.Y. Nov. 14, 2012) (granting defendants summary judgment as to plaintiff's state law claims where plaintiff failed to name the individual defendants in his notice of claim); Holloman v. City of New York, No. 11 Civ. 1624 (AKH), 2012 U.S. Dist. LEXIS 187736 (S.D.N.Y. June 7, 2012) (same); De Michele v. Tierney, No. 09 Civ. 9334 (PGG), Dkt No. 146, Slip Op. (S.D.N.Y. Dec. 14, 2012)[8]  (same). Accordingly, plaintiff's state law negligence claims against the individual defendants must be dismissed.

### POINT V

### PLAINTIFF   MAY   NOT   MAINTAIN   A NEGLIGENCE   CLAIM   AGAINST   THE INDIVIDUAL   DEFENDANTS   FOR   THEIR INTENTIONAL ACTS

Plaintiff's Seventh Claim for Relief, Comp., ¶¶ 133-134, fails to allege a plausible negligence claim against any of the individual defendants for their intentional acts, and does not allege a plausible negligence claim as against as against the individual defendants other than Gallitelli and Licitra.

The complaint does not state a plausible negligence claim against the individual defendants because New York does not recognize negligent intentional acts.  In New York, "once offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently."  Oliver v. Cuttler, 968 F. Supp. 83, 92 (E.D.N.Y. 1997) (quoting Mazzferro v. Albany Motel Enterprises, Inc., 127 A.D.2d 374, 515 N.Y.S.2d 631, 632-633 (N.Y. App. Div. 3d Dep't 1987); Busch v. City of New York, No. 00 CV 5211 (SJ), 2003 U.S. Dist. LEXIS 27571, at *22 (E.D.N.Y. Sept. 11, 2003) (holding that caselaw in this circuit is clear that negligence claim will not stand where "a plaintiff asserts excessive force . . . claims which are premised upon a defendant's allegedly intentional conduct") (quoting Dineen v. Stramka, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002)) (citation omitted).  If the plaintiff alleges intentional conduct in support of a claim for excessive force or battery, he may not also base a claim for negligence on that same conduct. Glowczenski v. Taser Int'l Inc., No. CV04-4052(WDW), 2010 U.S. Dist. LEXIS 47129, at *22 (E.D.N.Y. May 13, 2010) (citation omitted) ("to the extent that the negligence claims are duplicative of the false arrest, excessive force, or battery counts, or are based on intentional conduct, they should not (and will not) go to the jury"); Vilkhu v. City of New York, No. 06-CV-2095 (CPS) (JO), 2008 U.S. Dist. LEXIS 36454, at *28-30 (E.D.N.Y. May 5, 2008).  Accordingly, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." Id. (internal quotation marks and citations omitted).  And the Second Circuit has recognized the mutual  exclusivity of negligence and battery, because "negligence is unintentional." United National Insurance Co. v. Tunnel, Inc., 988 F.2d 351, 353 (2d Cir. 1993).

---

[8] For the Court's convenience, a copy of the slip opinion is attached to the Myrvold Dec. as

Further, "New York Courts have rejected uniformly such attempts to transmogrify intentional torts into 'negligence.'" <u>Schmidt v. Bishop</u>, 779 F. Supp. 321, 324-25 (S.D.N.Y. 1991) (dismissing negligence claim by plaintiff who alleged that her priest sexually abused her); <u>Mitchell v. County of Nassau</u>, No. CV-05-4957 (SJF)(WDW), 2007 U.S. Dist. LEXIS 38711, at *42-43 (E.D.N.Y. May 24, 2007) ("Plaintiff's creative attempt to describe her negligence claim as one   for . . . negligent maintenance of equipment and negligent hiring and supervision, cannot circumvent [the] public policy of the State of New York."); <u>Jenkins v. City</u> of New York, No. 91 Civ. 3539 (RLC), 1992 U.S. Dist. LEXIS 8279, at *23-24 (S.D.N.Y. Jun. 15, 1992) (dismissing negligence claims described as, *inter alia*, negligent investigation, negligent training and negligent supervision, on the basis of New York's public policy prohibiting causes of action for negligent prosecution or investigation);.

Here, plaintiff's complaint alleges, in a conclusory fashion, state law negligence claims that the "individual officers, acting within the scope of their employment, negligently discharged their duties by failing to exercise a reasonable degree of care, and thereby caused Mohamed to sustain the injuries and deprivations aforementioned" Comp., ¶ 133, and that these negligent acts included "forcibly breaking … Mohamed's door, negligently discharging the Taser, and other conduct that was improper under the circumstances and caused Mohamed to become agitated, non-cooperative and emotionally distraught."  Comp., ¶ 134.  With respect to the allegation that the individual officers broke plaintiff's door, the complaint alleges intentional conduct - that the ESU officers "blocked the peephole," "removed the peephole" and "used a hydraulic device to breach [Mohamed's] door."  Comp., ¶¶ 48-51.  It is also alleged that these actions deprived him of Mohamed's Fourth Amendment rights to be "secure in his home" and

Exhibit D.

constituted an "unlawful entry" under the Fourth and Fourteenth Amendments.  Comp., ¶¶ 97, 99.

The allegations regarding the Taser discharge also reflect intentional rather than negligent acts – the complaint alleges that "Kress fired his Taser at [Mohamed]" and that "McCormack fired his Taser from behind Mateo and over Mateo's shoulder."  Comp., ¶ 52.  The complaint goes on to allege that these officers used the Taser darts negligently and consequently they were ineffective, Id.; however, the complaint alleges that these same acts constituted excessive force under the Fourth and Fourteenth Amendments, Comp., ¶ 99, "were intentional," "constituted an excessive use of force" and "constituted unlawful assaults and batteries."  Comp., ¶¶ 126-128.

The allegations that the individual defendants "other conduct that was improper under the circumstances and caused Mohamed to become agitated, non-cooperative and emotionally distraught," are likewise based on intentional acts.  With respect to the non-ESU officers, the complaint merely alleges that these four officers were the initial responders, Comp., ¶¶ 15-18, 26, that they spoke to the decedent's mother, Comp., ¶¶ 27, 28, went to the decedent's apartment, knocked on the door and "attempted to force their way into the apartment," and that the decedent closed and locked the door.  Comp., ¶ 29.  With respect to the ESU officers, the complaint alleges that "[d]uring the hour long siege, the ESU officers yelled at Mohamed, taunted him, screamed that they were not leaving until he came outside, and repeatedly kicked his door," Comp., ¶ 47, that they blocked and then removed the door's peephole, Comp., ¶ 48-49, used a hydraulic device to open his door, and then entered the apartment, shot plaintiff with tasers, shot plaintiff with a rubber pellet, and fatally shot him.  Comp., ¶¶ 50-55.

Further, the complaint does not plausibly allege any state law claims against three of the non-ESU officers, Johnson, Stanton or Santana, whether intentional or negligent, that caused plaintiff's injuries.  Plaintiff's complaint does not allege any state law intentional tort claims against Gallitelli, Johnson, Stanton, Santana and Licitra.  Comp., ¶¶ 117-140.  The complaint does not plausibly allege any negligent conduct on the part of Johnson, Stanton and Santana part.  Rather, the complaint merely alleges that these officers, and Gallitelli, were the initial responders, Comp., ¶¶ 15-18, 26, that they spoke to the decedent's mother, Comp., ¶¶ 27, 28, went to the decedent's apartment, knocked on the door and "attempted to force their way into the apartment" Comp., ¶ 29, and that the decedent closed and locked the door.  Comp., ¶ 29.  As such, stripping away the conclusory allegations of negligence in paragraph 134 of the complaint, and considering the complaint's actual allegations against Johnson, Stanton and Santana, plaintiff's negligence claims against these three officers must be dismissed for this additional reason.

There is nothing alleged in the complaint that suggests that Johnson's, Stanton's, Santana's, McCormick's, Kress's, Mateo's or Green's conduct was in any way an oversight, an inadvertent failure to exercise an expected standard of care, or a neglect. Rather, the wrongs alleged against them were intentional and deliberate and allegedly in their nature offensive. They therefore are outside the ambit of actionable negligence and will be compensable, if compensable, under one or more of the state law causes of action for state law assault and battery, or § 1983 excessive force (against McCormack, Mateo, Kress and Green only) as to which defendants are not seeking dismissal.

**POINT VI**

**THE     NEGLIGENT     TRAINING     AND
SUPERVISION CLAIMS ARE MERITLESS**

Plaintiff's Seventh Claim for Relief also includes a negligent training and supervision claim against the City for failing to properly train or supervise its officers "in how to properly respond to service calls involving emergency medical situations or [EDP's]" and "in the use of Tasers, physical force, deadly force, or the continuum of force." Comp., ¶¶ 137-138.  This claim also fails to allege a plausible claim against the City.  The complaint contains no factual support for the conclusory allegation that the City failed to properly train or supervise its officers.  Comp., ¶¶ 137-138.  Without more, plaintiff offers only a formulaic recitation of the elements of a cause of action for negligent training and supervision that fails to satisfy the Iqbal pleading standard and should be dismissed.

This claim would, in any event, be incompatible with plaintiff's respondeat superior claim against the City.   Plaintiff alleges that the officers acted within the scope of their employment, Comp., ¶¶ 10-18-136 – as she must in order to plead a respondeat claim.  See, e.g., Massey v. Starbucks Corp., 2004 U.S. Dist. LEXIS 12993 at *24 (S.D.N.Y. July 12, 2004). However, a negligent training and supervision claim cannot be sustained where the employee acts within the scope of his/her employment.  See e.g., Newton v. City of New York, 681 F. Supp. 2d 473, 494-95 (S.D.N.Y. 2010).  Thus, plaintiff's proposed claim for negligent training and supervision, too, fails as a matter of law. Accordingly, this state law claim must be dismissed.

## Conclusion

For the foregoing reasons, defendants respectfully request that the Court dismiss the complaint to the extent discussed above with prejudice under Fed. R. Civ. P. 12(b)(6), together with the costs, expenses and disbursements of this motion.

Dated: New York, New York
       January 24, 2014

Respectfully submitted,

JEFFREY D. FRIEDLANDER
Acting Corporation Counsel of the City of
   New York
*Attorney for Defendants*
THE CITY OF NEW YORK, JOSEPH
MCCORMACK, MICHAEL LICITRA,
ROBERT GALLITELLI, BRIAN
STANTON, ESMERALDA SANTANA and
VINCENT JOHNSON
100 Church Street, Room 3-162
New York, New York 10007
(212) 356-2324
bmyrvold@law.nyc.gov

By: _____
       Barry Myrvold
       Ashley Garman

- 23 -