

**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NY 10007

**ZACHARY W. CARTER**
*Corporation Counsel*

*Barry Myrvold*
*Senior Counsel*
bmyrvold@law.nyc.gov
(212) 356-2324 (tel.)
(212) 356-3509 (fax)

March 14, 2016

**BY ECF**
Honorable P. Kevin Castel, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: <u>Estate of Mohamed Bah v. City of New York, et al.</u>, 13-cv-6690 (PKC) (KNF)

Your Honor:

      I am counsel for defendants The City of New York, Joseph McCormack, Michael Licitra, Robert Gallitelli, Brian Stanton, Esmeralda Santana, Vincent Johnson, Edwin Mateo, Andrew Kress and Michael Green. Defendants respectfully request a pre-motion conference to address defendants' proposed motion to exclude the testimony of plaintiff's proposed experts, Michael M. Baden, M.D. and Gene Maloney, under <u>Daubert v. Merrell Dow Pharms. Inc.</u>, 509 U.S. 579 (1993). The bases for defendants' anticipated motion are set forth below. Defendants are requesting leave to file this motion now anticipating that plaintiff may attempt to rely on inadmissible expert testimony as part of their opposition to the dispositive motion being filed today. Defendants submit that the <u>Daubert</u> briefing schedule should parallel the spoliation motion schedule: Defs. Motion Due: April 14, 2016; Pls. Opp. Due: May 2, 2016; Defs. Reply Due: May 16, 2016.

      Dr. Baden is a medical examiner/forensic pathologist. Based on Dr. Baden's report, it appears that plaintiff will be asking to opine about matters outside of his area of professional expertise. First, Dr. Baden should not be permitted to testify as to the decedent's psychiatric/emotional state, the impact of the officers' "aggressive" actions on the decedent's psychiatric/emotional state, and that the outcome "probably" would have been different if the officers had allowed his mother or a mental health professional to talk to him. Dr. Baden is simply unqualified to testify regarding psychiatric matters, the impact of police tactics or procedures on an individual's psychiatric/emotional state, or whether the outcome would have been any different if his mother or a mental health professional had talked to the decedent. He is not a psychiatrist, psychologist or police practices expert, but rather is a medical examiner/forensic pathologist. Merely because Dr. Bade possesses a medical degree does not qualify him as an expert in all medically related fields. See, e.g., <u>Deimer v. Cincinnati Sub-Zero Products, Inc.</u>, 58 F.3d 341, 345 (7th Cir. 1995) (physician is not qualified to testify on matters

beyond his "requisite experience"); <u>O'Conner v. Commonwealth Edison Co.</u>, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) (noting that treating physicians must also meet the requirements of Federal Rule of Evidence 702).

Second, Dr. Baden should not be permitted to testify about the manner in which the decedent sustained his wounds, and whether the location and angle of the various entry wounds are or are not consistent with the officers' testimony. Again, while Dr. Baden may be eminently qualified to testify about forensic pathology (determining cause of death through autopsy), he is not qualified as an expert in the field of ballistics or crime scene reconstruction. See <u>Lee v. City of Richmond</u>, No. 3:12 cv 471, 2014 U.S. Dist. LEXIS 139366, at *39-40 (E.D. Va. Sept. 30, 2014) (excluding forensic pathologist's opinions about the sequence of shots and the position of the decedent during the shooting as unreliable based on his reading of the autopsy report); <u>Meadours v. Ermel</u>, No. H-04-102, 2005 U.S. Dist. LEXIS 44131, at *10-11 (S.D. Texas, Aug. 10, 2005) (excluding medical doctor's testimony regarding injury causation and biomechanics because his "pattern analysis" methodology was unreliable). As such, testimony by Dr. Baden regarding the manner in which the decedent sustained his injuries (beyond the location and angle of entry) or whether or not this is consistent with the officers' testimony, should be excluded.

Plaintiff's other expert, Gene Maloney, is a retired NYPD officer. Based on Mr. Maloney's report, it appears that he will broadly be testifying as a police practices expert. His testimony should similarly be precluded. First, Mr. Maloney's opinions lack any basis in his experience. <u>Bazile v. City of New York</u>, No. 02-7868, 64 Fed. Appx. 805, 809 (2d Cir. May 1, 2003) (affirming exclusion of proffered expert's testimony where expert had no "particular experience that would qualify him" to assess the issue he was called to testify about); <u>Cerbelli v. City of New York</u>, No. 99 Civ. 6846 (ARR) (RML), 2006 U.S. Dist. LEXIS 69902, at *22, 28-29 (E.D.N.Y. Sept. 26, 2006). In <u>Cerbelli,</u> the expert, a former police commissioner with "over thirty-five years of experience in law enforcement and criminal justice" <u>Id</u>. at *22, was precluded from opining of EDP practices where he had "very little direct experience with EDPs and [had] never had professional involvement with evaluating police interactions with EDPs or establishing policies or procedures with respect to EDPs specifically." <u>Id</u>. at *29-30. Here, Mr. Maloney was an instructor in NYPD's Firearms and Tactics section and had no dealings with EDPs.

Second, Mr. Maloney's opinions are not reliable. Maloney advances no methodology in support of his purported conclusions. Despite his experience in law enforcement, Maloney fails to show that the opinions contained in his report are "reliably based upon his experience" and that "he has reliably applied his knowledge…to the specific facts of the case." <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., LLC</u>, 691 F. Supp. 2d 448, 465 n.92 (S.D.N.Y. 2010). Rather, the Maloney Report is replete with *ipse dixit* opinions that fail to satisfy these standards. Specifically, Maloney purports to rely on "generally accepted practices" for the field, but fails articulate a sufficient methodology for employing such standards. Maloney's failure to pinpoint the source and content of his "generally accepted practices" standard makes manifest his failure to employ a reliable methodology in support of his conclusions. He does not link the particular practices he espouses to any specific source to establish that they are, in fact, "generally accepted" by the law enforcement community. See <u>Lippe v. Bairnco Corp.</u>, 288 B.R. 678, 687 (S.D.N.Y. 2003), aff'd, 2004 U.S. App. LEXIS 7027

Hon. P. Kevin Castel, USDJ
March 14, 2016
Page 3 of 3

(2d Cir. Apr. 9, 2004) (citing Daubert, 509 U.S. at 593) (in determining reliability, "where an expert's methodology is experience-based, [a court may consider] whether the methodology has been generally accepted in the relevant community"). "[I]f the witness is relying solely or primarily on experience, then [he] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Linkco, Inc. v. Fujitsu Ltd., No. 00 Civ. 7242 (SAS), 2002 U.S. Dist. LEXIS 12975, at *13 (S.D.N.Y. Jul. 16, 2002) (quoting Fed. R. Evid. 702 Advisory Committee Note). Thus, "an expert basing his opinion solely on experience 'must do more than aver conclusorily that his experience led to his opinion….'" Linkco, 2002 U.S. Dist. LEXIS 12975, at *12 (quoting Primavera Familienstifung v. Askin, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001)). See, e.g., Thomas v. City of Chattanooga, 398 F.3d 426, 430-31 (6th Cir. 2005) (affirming exclusion of police practices expert's testimony where expert's affidavits did not contain any qualitative analysis, "provide[d] no rationale for his conclusions" and noting that "[plaintiffs] are asking that we take their expert's "word for it"); Cerbelli, 2006 U.S. Dist. LEXIS 69902, at *19-20 (expert not permitted to testify that policies and procedures of certain police departments were superior, as "those opinions are not based on any reliable methodology").

      Third, Maloney's factual narrative intrudes on the province of the jury and the role of counsel. "When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." Cerbelli, 2006 U.S. Dist. LEXIS 69902, at *39-40. Maloney's report is primarily a summary of the facts constructed entirely from the discovery in this case. It does not draw on any specialized knowledge, but instead his opinions draw favorable conclusions that are only vaguely supported by an attempt at a common-sense argument, and, as such, these opinions intrude on the jury's role. In so testifying, Maloney is serving no purpose other than to summarize and interpret evidence that can be understood easily by the jury without his assistance and, essentially, is simply delivering a "summation from the witness stand." Lippe, 288 B.R. at 687-88 (excluding purported expert witness who merely summarized and interpreted evidence that was otherwise understandable by the jury) (emphasis added); LinkCo, 2002 U.S. Dist. LEXIS 12975 at *6 (if an expert does little more than what "counsel for plaintiff will do in argument, i.e., propound a particular interpretation of defendant's conduct," that testimony is not admissible) (citation omitted).

      Thank you for your consideration of this request.

                                          Respectfully submitted,

                                          /s/

                                          Barry Myrvold

cc:      All counsel **(by ECF)**