1:13-cv-06690-PKC-KNF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OUMOU BAH, AS ADMINISTRATOR OF THE
ESTATE OF MOHAMED BAH,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

efendants.

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO SEAL

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York,*
*Attorney for Defendants The City of New York,*
*Edwin Mateo, Andrew Kress, Michael Green,*
*Joseph McCormack, Michael Licitra, Robert*
*Gallitelli, Brian Stanton, Esmeralda Santana,*
*Vincent Johnson*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel:  Ashley Garman*
*Barry K. Myrvold*

*Tel:  (212) 356-3539*
*Matter #:  2013-045609*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................*iii*

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY................................2

      A.  Discovery and the Protective Order....................................................2

      B.  The Documents to be Sealed.............................................................3

      C.  The Instant Motion........................................................................6

LEGAL STANDARD CONCERNING MOTIONS TO SEAL........................................8

ARGUMENT

      POINT I: THE ESU COURSE OUTLINE, HNT TACTICAL
      GUIDE AND LETTER OF INSTRUCTION ARE
      NOT JUDICIAL DOCUMENTS, AT LEAST
      NOT IN THEIR ENTIRETY.................................................................9

      A.  The ESU Course Outline, HNT Tactical Guide and
      Letter of Instruction Are Not Judicial Documents Because
      Plaintiff Does Not Cite to or Otherwise Reference These
      Documents in Her Opposition Memorandum...................................9

      B.  At The Very Most, Only Those Pages of the Documents To
      Which Plaintiff Cites in Her 56.1 Counterstatement Can
      Even Arguably Be Construed As Judicial Documents.....................11

      POINT II: THE PRESUMPTION OF ACCESS WEIGHS
      AGAINST MAKING THE ESU COURSE OUTLINE,
      THE HNT TACTICAL GUIDE AND THE LETTER
      OF INSTRUCTION PUBLIC.............................................................13

      A.  If a Presumption of Access Exists at All, the
      Presumption is Weak.................................................................13

      B.  Countervailing Factors Weigh Against Public Access
      to the ESU Course Outline, the HNT Tactical Guide

and the Letter of Instruction...........................................................................15

CONCLUSION................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re City of New York,
607 F.3d 923 (2d Cir. 2010)...............................................................................16

In re Department of Investigation,
856 F.2d 481 (2d Cir. 1988)...............................................................................16

Lugosch v. Pyramid Co. of Onondaga,
435 F.3d 110 (2d Cir. 2006)....................................................................... *passim*

In re NBC Universal,
426 F. Supp. 2d 49 (E.D.N.Y. 2006) .....................................................................9

In re New York Times Co.,
828 F.2d 110 (2d Cir. 1987)..................................................................................9

Ottati v. City of Amsterdam,
No. 06 Civ. 1370 (NPM) (DEP),
2010 U.S. Dist. LEXIS 145010 (N.D.N.Y. Jan. 25, 2010)......................................11

Puerto Rico v. Shell Oil Co. (In re Methyl Tertiary Butyl Ether Prods.
Liab.Litig.),
No. 07 Civ. 10470 (SAS),
2013 U.S. Dist. LEXIS 98913 (S.D.N.Y. July 12, 2013) .................................10, 11

Smith v. Freland,
954 F.2d 343 (6th Cir. 1992) ...............................................................................14

United States v. Amodeo,
44 F.3d 141 (2d Cir. 1995)..............................................................8, 10, 11, 15

United States v. Amodeo,
71 F.3d 1044 (2d Cir. 1995)...................................................................... *passim*

**Other Authorities**

U.S. Constitution, First Amendment...............................................................8, 9

Fed. R. Evid. 402 and 403..................................................................................15

Federal Rule of Civil Procedure 26(c) ...................................................................1

Local Civil Rule 56.1 ................................................................................ *passim*

Defendants The City of New York, Edwin Mateo, Andrew Kress, Michael Green, Joseph McCormack, Michael Licitra, Robert Gallitelli, Brian Stanton, Esmeralda Santana and Vincent Johnson, by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure 26(c) to seal certain documents submitted by plaintiff in connection with her Opposition to defendants' motion for summary judgment.

## PRELIMINARY STATEMENT

This matter involves claims brought by Oumou Bah, as administrator of the estate of her brother, Mohamed Bah ("Bah"), related to the September 25, 2012, shooting death of Bah by NYPD officers. Discovery in this matter, which was supervised by Magistrate Judge Kevin N. Fox, has concluded and defendants have moved for summary judgment on all of plaintiff's claims. In her Opposition to defendants' summary judgment motion, plaintiff submits as exhibits numerous documents that were designated by defendants as "Confidential Materials" and produced pursuant to a confidentiality stipulation and order endorsed by Magistrate Judge Fox. Plaintiff has not yet placed the confidential documents on the public docket but seeks to do so. Defendants now move this Court pursuant to Federal Rule of Civil Procedure 26(c) for an Order sealing certain of the confidential documents plaintiff seeks to file publicly as exhibits to her Opposition – specifically, plaintiff's Exhibits 17, 22 and 29, which comprise a (1) a Letter of Instruction contained in the personnel file of one of the defendant officers and (2) training materials and guidelines setting forth procedures of, and tactical maneuvers and equipment utilized by, two specialized NYPD units – as well as portions of other documents submitted in connection with plaintiff's Opposition quoting or otherwise making reference to the Letter of Instruction.

As set forth herein, the confidential material that defendants move to be sealed have no bearing on the Court's adjudication of the substantive legal issues in this matter, as evidenced, in part, by the fact that plaintiff does not cite to or otherwise make mention of any of these documents in her Memorandum of Law in Opposition to defendants' summary judgment motion.  At the same time, public disclosure of the tactical training documents and guidelines would present a risk to the safety and effectiveness of two specialized NYPD Units – the Emergency Services Unit and the Hostage Negotiation Team – and disclosure of the Letter of Instruction would serve no purpose except to impinge upon the recipient officer's privacy interests and besmirch his/her reputation.  Accordingly, defendants respectfully submit that if a presumption of public access to these documents exists at all, any such presumption is weak and is outweighed by countervailing factors – to wit, the risk of impairing and potentially endangering law enforcement and the unwarranted intrusion upon the privacy interests of one of the police officer defendants – and that sealing of these documents, and of certain other materials submitted with plaintiff's Opposition that make reference to them, is therefore warranted under Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006).

## STATEMENT OF RELEVANT
## FACTS AND PROCEDURAL HISTORY[1]

### A.  Discovery and the Protective Order

Plaintiff commenced this action on September 23, 2013, and filed an amended complaint on December 9, 2013, asserting claims against the City, five NYPD Emergency Services Unit ("ESU") officers and four officers from the local precinct in connection with the September 25, 2012, shooting death of plaintiff's decedent, Mohamed Bah.  Declaration of

---

[1] As there is a fully-briefed summary judgment motion in this matter currently pending before the Court, defendants respectfully refer the Court to those motion papers for a recitation of the underlying facts related to the September 25, 2012, incident.

Ashley R. Garman, dated June 9, 2016 ("Garman Decl."), ¶¶ 2-3.  On November 19, 2013, by

Order of the Honorable P. Kevin Castel, USDJ, this matter was referred to the Honorable Kevin

N. Fox, USMJ, for purposes of general pretrial supervision.  Id., ¶ 4.  On February 21, 2014, a

Stipulation and Protective Order (the "Protective Order"), which was mutually-executed by

counsel for the parties, was endorsed by Magistrate Judge Fox and entered in this matter.  Id., ¶

5.   The Protective Order provides, inter alia, that the parties may designate certain documents

"Confidential Material," and that

> [a]ny party seeking to file papers with the Court that
> incorporate Confidential Materials or reveal the
> contents thereof shall first make an application to
> the Court for permission to file under seal the
> specific portions of those papers disclosing
> Confidential Materials...

Protective Order (Dkt. No. 38), ¶ 8.  The Protective Order further requires that if a party objects

to any confidentiality designations, the party must state such objection in writing to counsel for

the party making the confidentiality designation.  See id., at ¶ 7.

## B.  **The Documents to be Sealed**

During discovery, defendants produced a number of documents that they

designated confidential pursuant to the Protective Order.  Garman Decl., ¶ 6.   Among those

documents, as pertinent to this motion, were, inter alia: (1) a Letter of Instruction, issued on June

24, 2014, to the personnel file of one of the defendant officers in connection with an internal

NYPD review of the September 25, 2012, incident (the "Letter of Instruction"); (2) the NYPD

ESU Entry Level Training Course Outline related to the training provided to new ESU officers at

the Specialized Training School (the "ESU Course Outline"); (3) the NYPD Hostage Negotiation

Team ("HNT") Organizational and Tactical Guide (the "HNT Tactical Guide"); and (4) a Final

Summary Report of the NYPD Chief of Department's Firearms Discharge Review Board,

including a First Endorsement thereto by the Police Commissioner's Office (the "FDRB Final Summary Report and First Endorsement"). Id., ¶ 7.

The ESU Course Outline is a 17-page document, which, as set forth in the Declaration of Deputy Inspector Matthew Galvin, the Executive Officer of ESU, comprises the itinerary for the eight-month long specialized training program through which all ESU officers are trained. Declaration of Matthew Galvin, dated May 27, 2016 ("Galvin Decl."), ¶¶ 3-4; see also, generally, Declaration of Debra S. Cohen, dated April 25, 2016 (Dkt. No. 141) ("Cohen Decl."), Ex. 22 (ESU Course Outline). ESU officers essentially perform tactical and technical rescue duties as a support unit for all of the NYPD. Galvin Decl., ¶ 3. As such, the ESU Course Outline covers training in a wide variety of topic areas. See, generally, Cohen Decl., Ex. 22 (ESU Course Outline). One week of the eight-month ESU training is devoted to Emergency Psychological Technician training, which involves handling situations involving persons with mental illnesses, and a single paragraph in the ESU Course Outline summarizes that training. See Cohen Decl., Ex. 22 (ESU Course Outline), at DEF2706. Within the various topic areas, the ESU Course Outline contains mention of the tools that ESU officers have in their possession, and matches those tools with the specific types of jobs to which the officers might respond; it also details the kinds of entries that the ESU officers deploy. Galvin Decl., ¶¶ 3, 5.

The HNT Tactical Guide (a 23-page document) is, according to HNT Commanding Officer Lieutenant Christopher Zimmerman, the operational and training handbook for hostage situations that HNT officers – who are tasked with the safe and peaceful release of hostages, emotionally disturbed persons and/or barricaded persons, and who receive special training in negotiation methods and techniques – may be faced with. Declaration of Lt. Christopher Zimmerman, dated June 8, 2016 ("Zimmerman Decl."), ¶¶ ¶¶ 3-4. The HNT

Tactical Guide contains descriptions of personnel who would be present at the Command Center of a hostage situation, potential scenarios and explicit discussion of negotiation techniques that are currently used by the NYPD. Id., ¶ 4.

The Letter of Instruction is a document that was issued on June 24, 2014, to the personnel folder of one of the defendant officers in connection with an internal NYPD review of the September 25, 2012, incident that is the subject of this lawsuit. See Cohen Decl., Ex. 17 (Letter of Instruction). The FDRB Final Summary Report and First Endorsement refers, in two separate places, to the issuance of the Letter of Instruction to the recipient officer and of the findings against that officer. See Garman Decl., Ex. B (FDRB Final Summary Report and First Endorsement), at DEF2127 and DEF2137.

Plaintiff never objected, in writing or otherwise, to the designation of the aforementioned documents or any other documents designated as confidential by defendants during discovery. Garman Decl., ¶ 8. Following the close of discovery, defendants moved for summary judgment on all of plaintiff's claims, and plaintiff filed an Opposition to defendants' summary judgment motion on April 25, 2016. Id., ¶¶ 9-10. In connection with her Opposition, plaintiff filed the Cohen Declaration and attached 67 exhibits thereto, many of which comprised documents that defendants had designated confidential pursuant to the Protective Order. Id., ¶¶ 11-12. Plaintiff did not file the exhibits that consisted of confidential documents on the docket. Id., ¶ 12. Plaintiff also submitted as part of her Opposition a "Counter Statement of Disputed and Undisputed Facts Pursuant to Local Civil Rule 56.1 (the "Rule 56.1 Counterstatement"), which, in addition to responding to defendants' 56.1 Statement, contained approximately 450 additional paragraphs. Id., ¶ 13. Certain of those paragraphs – specifically, paragraphs 404, 438, 651(d), 652, 653 and 654- quote from or otherwise contain information from the Letter of

Instruction.  Pl. R. 56.1 Counterstatement (Dkt. No. 140), ¶¶ 404, 438, 651(d), 652, 653 and 654.

The entire 56.1 Counterstatement was publicly filed on the docket.  See Dkt. No. 140.  Following

the filing of plaintiff's Opposition papers, defendants advised plaintiff that the aforementioned

paragraphs in plaintiff's Rule 56.1 Counterstatement (as well as certain other paragraphs[2] and

portions of plaintiff's Opposition Memorandum) incorporated confidential materials in violation

of the Protective Order and requested that plaintiff immediately remove those documents from

the docket and redact the confidential material contained therein before re-filing.  Garman Decl.,

¶ 14.  Plaintiff did not do so.  Id., ¶ 15.

## C.  **The Instant Motion**

On May 9, 2016, plaintiff requested the Court's permission to publicly file the

exhibits to the Cohen Declaration that had been designated by defendants as "Confidential

Material," including, inter alia, the Letter of Instruction, the ESU Course Outline, the HNT

Tactical Guide and the FDRB Final Summary Report and First Endorsement.   Garman Decl., ¶

18.   Defendants now move for an Order sealing the Letter of Instruction, the ESU Course

Outline and the HNT Tactical Guide – Exhibits 17, 22 and 29 Cohen Declaration, respectively.

Defendants also request that the Court direct plaintiff to file versions of Exhibits 18 and 52(d) to

the Cohen Declaration (which comprise duplicates of the FDRB Final Summary Report and First

---

[2] Defendants filed a response to plaintiff's Rule 56.1 Counterstatement which, in compliance with this Court's Individual Practices, repeated verbatim the paragraphs set forth by plaintiff in her Rule 56.1 Counterstatement; however, defendants redacted certain paragraphs from the publicly-filed version of their response, on the grounds that those specific paragraphs in plaintiff's Rule 56.1 Counterstatement quoted or otherwise incorporated certain Confidential Material.  Garman Decl., ¶ 17.  Specifically, defendants redacted from their response to the Rule 56.1 Counterstatement paragraphs ¶¶ 404, 438, 636, 645-47 and 649-54.  As defendants are not moving to seal all of the exhibits containing Confidential Material, they will re-file their response to plaintiff's Rule 56.1 Counterstatement with those redactions removed. However, should the Court be inclined to grant defendants' request that paragraphs 404, 438, 651(d), 652, 653 and 654 of plaintiff's Rule 56.1 Counterstatement, which refer to the Letter of Instruction, be redacted, defendants also request that they be permitted to maintain the redactions to those paragraphs, only, in their response.

Endorsement), if at all, with references to the Letter of Instruction redacted,[3] and to replace her Rule 56.1 Counterstatement with a version of that document with the paragraphs that make specific reference to and/or quote the Letter of Instruction (¶¶ 404, 438, 651(d), 652, 653 and 654) redacted.

As set forth herein, while plaintiff attaches the ESU Course Outline, HNT Tactical Guide and Letter of Instruction as exhibits to her Opposition papers, plaintiff does not refer to any of these documents *a single time* in her Opposition Memorandum or otherwise explain the purported relevance of these documents to her claims, and indeed, she cannot do so as these documents have no bearing on the resolution of the substantive legal issues in this matter. At the same time, as set forth in the Galvin and Zimmerman Declarations, the ESU Course Outline and HNT Tactical Guide contain law enforcement-sensitive information regarding law enforcement tools and tactics, the public disclosure of which presents a real risk to the effectiveness and safety of officers in these two specialized units. As for the Letter of Instruction, public disclosure of that document – a document contained in a police officer's personnel folder, in which the State of New York recognizes officers have a significant privacy interest – would serve no purpose other than to besmirch the reputation of the officer to whom it was issued. Defendants respectfully submit that, in light of the non-importance of these documents to the adjudication of the substantive legal issues in this matter, if a presumption of public access to these documents exists at all, any such presumption is weak and is outweighed by countervailing factors, i.e., the risk of impairing the activities and safety of law enforcement and the unwarranted intrusion upon the privacy interests of one of the police officer defendants.

---

[3] Defendants submit a proposed redacted version of the FDRB Final Summary Report and First Endorsement, under seal, as Exhibit "B" to the Garman Declaration.

Accordingly, these documents may properly be ordered sealed under the standard articulated by the Second Circuit in Lugosch, and defendants respectfully request that the Court do so.

## LEGAL STANDARD CONCERNING MOTIONS TO SEAL

Courts recognize a "common law right of public access to judicial documents." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). Where a party has moved to seal or otherwise limit public access to documents relating to a lawsuit, the Second Circuit has set forth a three-part analysis for determining whether those documents must be made available to the public. Id. at 119-20; United States v. Amodeo, 71 F.3d 1044, 1048-52 (2d Cir. 1995) ("Amodeo II").

First, the court must determine whether the documents are indeed "judicial documents" to which the public has a presumptive right of access. Lugosch, 435 F.3d at 119; Amodeo II, 71 F.3d at 1047; United States v. Amodeo, 44 F.3d 141, 145-46 (2d Cir. 1995) ("Amodeo I"). Second, if the documents are judicial documents, the court must then determine "the weight of the presumption," Lugosch, 435 F.3d at 119, meaning, whether the presumption is an "especially strong," or one that can be overcome only by "extraordinary circumstances"; whether the presumption is a "low," or one that "amounts to little more than a prediction of public access absent a countervailing reason"; or, whether the presumption falls in between. Amodeo II, 71 F.3d at 1048, 1050 (internal quotations and citations omitted). Third, "[o]nce the weight of the presumption is determined, a court must balance competing considerations against it." Id. at 1050. Countervailing factors include, among others, the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure. Lugosch, 435 F.3d at 120; Amodeo II, 71 F.3d at 1050.

In addition to the common law right of access, the public also enjoys a qualified presumption of access to civil judicial documents under the First Amendment. See Lugosch, 435

F.3d at 124.   Although "[t]he First Amendment demands broader disclosure than the common law," In re NBC Universal, 426 F. Supp. 2d 49, 56 (E.D.N.Y. 2006) (citing Lugosch, 435 F.3d at 124), documents subject to a qualified First Amendment right of access "may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."   Lugosch, 435 F.3d at 120 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

## ARGUMENT

### POINT I

#### THE ESU COURSE OUTLINE, HNT TACTICAL GUIDE AND LETTER OF INSTRUCTION ARE NOT JUDICIAL DOCUMENTS, AT LEAST NOT IN THEIR ENTIRETY

As a preliminary matter, defendants respectfully submit that the ESU Course Outline, the HNT Tactical Guide and the Letter of Instruction – which are not cited to or otherwise discussed in plaintiff's Memorandum of Law in opposition to defendants' summary judgment motion ("Opposition Memorandum") – are not judicial documents, and therefore do not carry a presumptive right of access by the public.   At the very most, only such portions of those documents that are cited to by plaintiff in her Rule 56.1 Counterstatement could reasonably be construed as judicial documents.

**A.     The ESU Course Outline, HNT Tactical Guide and Letter of Instruction Are Not Judicial Documents Because Plaintiff Does Not Cite to or Otherwise Reference These Documents in Her Opposition Memorandum**

Although Plaintiff has submitted these documents – among many others – as exhibits with her Opposition to defendants' summary judgment motion, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject

to the right of public access." <u>Amodeo I</u>, 44 F.3d at 145-46.  Rather, as the court in <u>Amodeo II</u>

stated:

> [A]n abundance of statements and documents
> generated in federal litigation actually have little or
> no bearing on the exercise of Article III judicial
> power. . . . [T]he temptation to leave no stone
> unturned in the search for evidence material to a
> judicial proceeding turns up a vast amount of not
> only irrelevant but also unreliable material.
>
> Unlimited access to every item turned up in the
> course of litigation would be unthinkable.

71 F.3d at 1048.  <u>See also</u> <u>Puerto Rico v. Shell Oil Co. (In re Methyl Tertiary Butyl Ether Prods.</u>

<u>Liab. Litig.)</u>, No. 07 Civ. 10470 (SAS), 2013 U.S. Dist. LEXIS 98913, at *6 n. 14 (S.D.N.Y. July

12, 2013) ("<u>MTBE Litigation</u>") (considering the filing requirements set forth in Fed. R. Civ. P.

5(d)(1) and the Advisory Committee note to the 2000 Amendments to the Federal Rules of Civil

Procedure, and noting that "the filing requirement applies only with regard to materials that are

used [in actions by the Court], [and] only those parts of voluminous materials that are actually

used need be filed").

Here, plaintiff submits 67 exhibits with the Cohen Declaration and 450-odd

paragraphs' worth of additional facts in her Rule 56.1 Counterstatement.  However, the

irrelevance of most of this material to the substantive legal issues in this matter is demonstrated

by plaintiff's failure to cite to much of this material in her Opposition Memorandum, or to

otherwise explain the purported relevance of a large number of these exhibits.[4]  This is especially

true of the ESU Course Outline, HNT Tactical Guide and Letter of Instruction – plaintiff's

---

[4] Plaintiff does cite to the Letter of Instruction and a handful of pages of the ESU Course Outline and
HNT Tactical Guide in certain paragraphs of her Rule 56.1 Counterstatement; however, she does not cite
to those portions of her Rule 56.1 Counterstatement in her Opposition Memorandum or otherwise explain
the relevance of those paragraphs to her claims.

Opposition Memorandum contains no reference or citations whatsoever to any of these documents. There being nothing in plaintiff's submissions to suggest any of these documents will have any "bearing on the exercise of Article III judicial power," Amodeo II, 71 F.3d at 1048, removing them from the docket does no harm to the public's potential entitlement to access documents that are "relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." Amodeo I, 44 F.3d at 145.

Accordingly, defendants respectfully submit that because the ESU Course Outline, HNT Tactical Guide and Letter of Instruction are not judicial documents to begin with, no presumption to access of the public applies and, because defendants have a legitimate interest in confidentiality with respect to these documents, as set forth below, these documents should be sealed. See, e.g., MTBE Litigation, 2013 U.S. Dist. LEXIS 98913, at *17-18 ("TPPRC's interest in confidentiality justifies maintaining under seal only those portions of the documents that are not relevant to the analysis of jurisdiction."); Ottati v. City of Amsterdam, No. 06 Civ. 1370 (NPM) (DEP), 2010 U.S. Dist. LEXIS 145010, at *22-23 (N.D.N.Y. Jan. 25, 2010) (ordering that transcripts of full deposition testimony, which it deemed "discovery materials and not judicial documents" were not to be filed on the public docket except where "deposition testimony [was] referenced in the defendants' motions for summary judgment") (emphasis added).

**B.    At The Very Most, Only Those Pages of the Documents To Which Plaintiff Cites In Her 56.1 Counterstatement Can Even Arguably Be Construed As Judicial Documents**

Not only is plaintiff's Opposition Memorandum silent with respect to these documents, plaintiff's Rule 56.1 Counterstatement contains citations only to the Letter of Instruction and to a few specific pages in both the ESU Course Outline and HNT Tactical Guide.

- 11 -

While defendants maintain that *no* portion of these documents comprise "judicial documents," at a very minimum, only those specific pages of those documents to which plaintiff cites in her Rule 56.1 Counterstatement can even arguably be construed as such.

Aside from citing the entire ESU Course Outline, generally, to support the proposition that ESU officers attend a specialized training school, Pl. 56.1 Counterstatement, ¶ 307,[5] plaintiff cites to only two pages out of the 17-page document – page 12 (DEF2703) and page 15 (DEF2706) – in her entire 698-paragraph 56.1 Counterstatement, see Pl. 56.1 Counterstatement, ¶¶ 308, 310, 312.   More specifically, plaintiff cites solely to information contained in the last bulleted paragraph of page 12 (DEF2703) for the proposition that ESU officers received training in less lethal delivery systems, Pl. 56.1 Counterstatement, ¶ 310; Cohen Decl., Ex. 22 (ESU Course Outline) at DEF2703,  and to the first bulleted paragraph of page 15 (DEF2706) for the proposition that the ESU officers' training included a week-long Emergency Psychological Technician ("EPT") course which includes training on handling involving Emotionally Disturbed Persons,  id., ¶¶ 308 and 312; Cohen Decl., Ex. 22 (ESU Course Outline) at DEF2706.  Similarly, with respect to the HNT Tactical Guide (which again, is not referenced a single time in plaintiff's Opposition Memorandum), plaintiff cites to four out of the Guide's 23 pages – p. iii (DEF2843), p. 1 (DEF2844), p. 13 (DEF2856), and p. 16 (DEF2859).  Pl. 56.1 Counterstatement,  ¶¶ 349-50, 355, 362-63 and 365-66.   Nonetheless, plaintiff submits the complete ESU Course Outline and HNT Tactical Guide as exhibits to her Opposition papers. Defendants respectfully submit that, at most, only those portions of the documents that defendants seek to have sealed to which plaintiff cites in her 56.1 Counterstatement are even arguably "judicial documents" to which a presumption of public access attaches.

---

[5] As plaintiff points out in that same paragraph, multiple ESU officers testified to this fact at their depositions; thus, the citation to the entire Course Outline is wholly unnecessary.

## POINT II

### THE PRESUMPTION OF ACCESS WEIGHS AGAINST MAKING THE ESU COURSE OUTLINE, THE HNT TACTICAL GUIDE AND THE LETTER OF INSTRUCTION PUBLIC

Even if the Court were to determine that the ESU Course Outline, HNT Tactical Guide and Letter of Instruction are judicial documents (in whole or in part) to which there is a presumption of access, here, any such presumption is weak and countervailing factors – i.e., the risk of impairing law enforcement activities and endangering officers and the infringement upon privacy interests – weigh against making such documents public.

**A.** **If A Presumption of Access Exists at All, the Presumption is Weak**

Once a court has deemed documents to be "judicial documents," the court must then determine "the weight of the presumption," Lugosch, 435 F.3d at 119. The strength of the presumption of access to judicial documents is measured along a continuum, based on the extent to which such documents affect the Court's adjudication of the merits of the parties' claims and defenses. As the Second Circuit has held, "where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." Lugosch, 435 F.3d at 121 (citing Amodeo II, 71 F.3d at 1049). However,

> [m]oving down the continuum, away from 'matters that directly affect and adjudication' and towards 'matters that come within a court's purview solely to insure their irrelevance…' 'the weight of the presumption declines.'

Id. (quoting Amodeo II, 71 F.3d at 1049).

Here, to the extent that the Court determines that a presumption of public access attaches to the ESU Course Outline, the HNT Tactical Guide and/or the Letter of Instruction, given these documents' irrelevance to the parties' claims and defenses in this matter, the weight

- 13 -

of such presumption is plainly minimal. As set forth above, plaintiff's Opposition Memorandum contains no references or citations to these documents, and the documents' purported relevance to the legal arguments set forth in plaintiff's Opposition is never explained. Indeed, plaintiff cannot explain the relevance of these documents because they in fact have no bearing on the Court's determination of the merits of defendants' summary judgment motion. With respect to the HNT Tactical Guide, for example, none of the individual defendants in this matter are members of HNT, nor are the procedures and tactics utilized by any HNT officer at issue in this matter. Thus, the organization and responsibilities of, and tactics utilized by, NYPD hostage negotiation-trained officers is of no relevance whatsoever to the parties' claims and defenses here.

The Letter of Instruction is equally irrelevant. To the extent that plaintiff suggests that the finding of a violation of a procedural guideline in the NYPD Patrol Guide in connection with the September 25, 2012, incident, leading to the issuance of the Letter of Instruction, constitutes a "conclu[sion] that the entry by ESU...was objectively unreasonable" and therefore in violation of the Constitution, Pl. Op. Mem., 17-18, this argument is both factually and legally incorrect. As set forth in defendants' Reply Memorandum in support of their summary judgment motion, whether or not NYPD guidelines were followed to the letter is irrelevant to the determination of whether Bah's constitutional rights were violated – which is what is at issue here. See Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("[u]nder § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force. A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"). For this reason – and because reference to a finding by the NYPD of a violation of an internal

procedural guideline would serve only to confuse a jury – evidence regarding this finding, including the Letter of Instruction issued as a result, would be inadmissible at trial under Fed. R. Evid. 402 and 403, and therefore should not be considered in determining the merits of defendants' summary judgment motion, either.

As the ESU Course Outline, HNT Tactical Guide and Letter of Instruction are, at best, documents that have come within this Court's purview "solely to insure their irrelevance," Lugosch, 435 F.3d at 121 (quoting Amodeo II, 71 F.3d at 1049), should the Court determine that there is a presumption of public access to the documents at all, the strength of any such presumption is plainly at the lowest end of the continuum and is easily outweighed by countervailing factors, as set forth below.

**B.    Countervailing Factors Weigh Against Public Access to the ESU
       Course Outline, the HNT Tactical Guide and the Letter of Instruction**

"Once the weight of the presumption is determined, a court must balance competing considerations against it." Amodeo I, 71 F.3d at 1048, 1050. "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Lugosch, 435 F.3d at 120 (internal citation and quotation marks omitted). Here, the weak presumption of access to the ESU Course Outline, the HNT Tactical Guide and the Letter of Instruction (if there is any such presumption at all) is readily outweighed by the potential danger that public disclosure of these documents would subvert the activities of two specialized units of law enforcement, compromise the safety of law enforcement and the public and, with respect to the Letter of Instruction, unnecessarily intrude upon the recipient officer's privacy.

The Second Circuit recognizes a law enforcement privilege, the purpose of which is to "prevent disclosure of law enforcement techniques and procedures, to preserve the

confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Department of Investigation, 856 F.2d 481, 484 (2d Cir. 1988). As the Circuit has noted, "the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." In re City of New York, 607 F.3d 923, 944 (2d Cir. 2010) (internal quotation marks and citation omitted).

As set forth in the Declarations of Deputy Inspector Galvin, the Executive Officer of ESU, and Lieutenant Christopher Zimmerman, the Commanding Officer of HNT, the ESU Course Outline and HNT Tactical Guide each contain law enforcement-sensitive material, including information pertaining to "law enforcement techniques and procedures," the public disclosure of which could seriously impair the future activities of the officers assigned to those respective units.   As a preliminary matter, both ESU and HNT serve specialized functions within NYPD, and respond to incidents that are highly sensitive in nature and that require specialized training.  ESU performs tactical and technical rescue duties as a support unit for all of the NYPD, and the types of jobs the ESU officers respond to are highly sensitive in nature. Galvin Decl., ¶¶ 1, 3, 5.  HNT officers are tasked with the safe and peaceful release of hostages, emotionally disturbed persons and/or barricaded persons; these situations are likewise extremely dynamic and highly sensitive in nature.  Zimmerman Decl., ¶¶ 3, 5.  In order to perform these specialized functions, members of ESU and HNT receive specialized training on top of the six months of training at the Police Academy that all new officers complete.  ESU officers undergo another eight-month training program during which they receive instruction in multiple disciplines of police and rescue work.  Galvin Del., ¶ 3.  HNT Officers undergo two weeks of

specialized training in several disciplines of police methods and techniques, and are required to attend bi-annual training for review and recertification. Zimmerman Decl., ¶ 3.

Given the types of jobs to which ESU and HNT officers are called to respond, the safety of the officers and of the public during the officers' response are of special concern. See Galvin Decl., ¶ 5; Zimmerman Decl., ¶ 5. As such, both Deputy Inspector Galvin, as the ESU Executive Officer and the individual who oversees all of ESU's tactical training, Galvin Decl., ¶ 1, and Lt. Zimmerman, as Commanding Officer of HNT who oversees all tactical training of HNT officers, Zimmerman Decl., ¶ 1, submit that public disclosure of the ESU Course Outline and the HNT Tactical Guide, respectively, which contain information regarding tools, personnel and tactics, would be detrimental to the safety and effectiveness of their officers' efforts.

Similarly, the ESU Course Outline is the itinerary for the ESU Officers' eight-month specialized training, and contains mention of the tools that ESU officers have in their possession, and matches those tools with specific types of jobs to which the officers might respond. Galvin Decl., ¶ 4. As set forth in his Declaration, Deputy Inspector Galvin advises that public disclosure of the ESU Course Outline, containing information regarding the tools at the ESU officers' disposal, the types of scenarios in which specific tools may be utilized and the kinds of entries that ESU officers deploy, could allow perpetrators to anticipate responding ESU officers' actions and subvert the officers' efforts, and "could potentially interfere with, if not outright compromise," the safety of ESU officers' response to hostage situations, for example, "as well as ESU's drills and maneuvers in general." Id., ¶ 5.

The HNT Tactical Guide is the operational and training handbook for hostage situations that HNT officers may be faced with. Zimmerman Decl., ¶ 4. It contains descriptions of personnel who would be present at the Command Center of a hostage situation, potential

scenarios and explicit discussion of negotiation techniques that are currently used by the NYPD. Id. According to Lt. Zimmerman, "[m]aking the Tactical Guide available to the public would create an unnecessary risk to those involved in these types of incidents," for example, by potentially giving a hostage-taker the ability to anticipate the HNT officers' moves and tactics, "right down to which of their demands are negotiable and which are not, and would enable them to carry out or adjust their plans accordingly." Id., ¶ 5. Additionally, public disclosure of the Tactical Guide raises concerns that spectators to a hostage situation – of which there are often large crowds – could utilize the information in the Tactical Guide to potentially interfere with HNT operations. Id.

Both Deputy Inspector Galvin and Lt. Zimmerman opine, based on the aforementioned considerations, that public disclosure of the ESU Course Outline and HNT Tactical Guide, respectively, could potentially compromise the effectiveness of their respective units' functions. Galvin Decl., ¶ 5; Zimmerman Decl., ¶ 5. Accordingly, and for the reasons set forth more fully in the Galvin and Zimmerman Delcarations, defendants respectfully submit that the ESU Course Outline and the HNT Tactical Guide are protected from public disclosure by the law-enforcement privilege.

With respect to the Letter of Instruction, this document is an employment record – a letter placed in the personnel file of one of the officer defendants. As set forth above, the issuance of the Letter of Instruction is irrelevant to the substantive issues in this case, and therefore serves no purpose in this litigation but to besmirch the reputation of the recipient officer. Defendants note that, under New York Civil Rights Law § 50-a, the Letter of Instruction, like all other personnel records of a police officer, is to be "considered confidential and not subject to inspection or review without the express written consent of such police

officer...." N.Y. Civ. Rights Law § 50-a.  While defendants recognize that courts in this Circuit have declined to apply § 50-a in cases, like this one, brought under 42 U.S.C. § 1983, defendants respectfully submit that the fact that the State of New York recognizes that police officers have a significant privacy interest in their personnel records serves to indicate that there are higher values at stake here.  Defendants respectfully submit that, weighed against the irrelevance of the Letter of Instruction to the substantive issues in this case, the defendant officer's privacy interest in his or her personnel records justifies sealing this document under the Lugosch standard.

Defendants produced the ESU Course Outline, HNT Tactical Guide and Letter of Instruction to plaintiff with the understanding that the parties' mutually agreed-upon Confidentiality Stipulation and Protective Order would prevent public dissemination of these materials.  As plaintiff now attempts to place these documents on the public docket, simply by attaching them as exhibits with their Opposition papers without reference thereto in their Opposition Memorandum, defendants respectfully submit that the considerations of law enforcement privilege and privacy that caused defendants to designate of these documents as "Confidential Material" in the first place now weigh against public disclosure.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court issue an Order: (1) sealing Exhibits 17, 22 and 29 to the Cohen Declaration (the Letter of Instruction, ESU Course Outline and HNT Tactical Guide); (2) directing that Exhibits 18 and 52(d) to the Cohen Declaration (the FDRB Final Summary Report and First Endorsement) be filed, if at all, with the proposed redactions set forth in Exhibit "B" to the Garman Declaration, submitted herewith; and (3) directing that plaintiff's Rule 56.1 Counterstatement be substituted with a version of that document with a version of that document with paragraphs 404, 438, 651(d), 652,

653 and 654, redacted, and granting such other and further relief as the Court deems just, proper,

and equitable.

DATED:      New York, New York                    Respectfully submitted,
            June 9, 2016


                                                  ZACHARY W. CARTER
                                                  Corporation Counsel of the City of New York
                                                  *Attorney for Defendants*
                                                  100 Church Street, Room 3-133A
                                                  New York, New York  10007
                                                  (212) 356-3539
                                                  agarman@law.nyc.gov

                                                  By: _____
                                                       Ashley R. Garman
                                                       Barry K. Myrvold