UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

OUMOU BAH, AS THE ADMINISTRATOR OF THE ESTATE OF MOHAMED BAH,

1:13-cv-06690-PKC-KNF

Plaintiff,

vs.

THE CITY OF NEW YORK, ET AL.,

Defendants.

-------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO SEAL**

DEBRA S. COHEN
RANDOLPH M. MCLAUGHLIN
NEWMAN FERRARA LLP
1250 BROAWAY, 27TH FLOOR
NEW YORK, NEW YORK 10001
Tel: 212-619-5400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

FACTS RELEVANT TO THE MOTION TO SEAL .......... 2

ARGUMENT .......... 5

I. LEGAL STANDARD .......... 5

II. ALL OF THE DOCUMENTS MEET THE FIRST PRONG OF THE *LUGOSCH* TEST . 5

a. The ESU Course Outline, HNT Tactical Guide and Letter of Instruction Comprise Judicial Documents .......... 5

b. The Documents in Their Entirety and the Cited Pages Comprise Judicial Documents ... 7

III. THE PRESUMPTION OF ACCESS WEIGHS IN FAVOR OF MAKING THE ESU COURSE OUTLINE, THE HNT TACTICAL GUIDE AND THE LETTER OF INSTRUCTION PUBLIC .......... 8

a. A Presumption of Access to Documents Referred to in a Party's Papers in Support or Opposition to Summary Judgment Exists and is Strong .......... 8

b. Factors Weigh Heavily in Favor of Public Access to the Documents .......... 10

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**CASES**

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132, 142 (2d Cir. 2016) .......... 6

*Coleman v. County of Suffolk*,
2016 U.S. Dist. LEXIS 45035 (E.D.N.Y. Mar. 31, 2016) .......... 11, 12

*Floyd v. City of New* York,
739 F. Supp. 2d 376 (2010) .......... 12, 13

*Hines v. Consol. Rail Corp.*,
926 F.2d 262 (3d Cir. 1991) .......... 10

*King v. Conde*,
121 F.R.D. 180 (E.D.N.Y. 1988) .......... 11

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006) .......... passim

*Natl. Congress for Puerto Rican Rights ex rel. Perez v City of New York*,
194 F.R.D. 88 (S.D.N.Y. 2000) .......... 12

*Ottati v. City of Amsterdam*,
2010 U.S. Dist. LEXIS 145010 (N.D.N.Y. Jan. 25, 2010) .......... 7

*SEC v. McGinnis*,
2015 U.S. Dist. LEXIS 127406 (D. Vt. Sept. 23, 2015) .......... 10

*Smith v Town of Stony Point*,
2014 U.S. Dist. LEXIS 77035 (S.D.N.Y. May 22, 2014) .......... 11

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) .......... 6, 8

*United States v. Dennis*,
625 F.2d 782 (8th Cir. 1980) .......... 10

*United States v. Gordon*,
987 F.2d 902 (2d Cir. 1993) .......... 10

*Wood v. Breier*,
54 F.R.D. 7 (E.D. Wis. 1972) .......... 13

**RULES**

Fed. R. Evid. 403 .......... 10

Plaintiff Oumou Bah, as Administrator of the Estate of Mohamed Bah, submits this Memorandum of Law in opposition to the Defendants' motion to seal certain documents submitted by Plaintiff in connection with her opposition to Defendants' motion for summary judgment.

## PRELIMINARY STATEMENT

Defendants seek to permanently seal by judicial order four (4) exhibits submitted by the Plaintiff in opposition to Defendants' motion for summary judgment. The exhibits are: 1) a Letter of Instruction issued to ESU supervisor Lt. Michael Licitra arising from actions he took during the Bah incident, Cohen Declaration in Opp. to Motion for Summary Judgment, ECF No. 141 ("Cohen SJ Decl."), Exhibit 17; 2) an outline of the Emergency Services Unit (ESU) Specialized Training School curriculum, Cohen SJ Decl., Exhibit 22; 3) the Hostage Negotiation Organizational and Tactical Guide, Cohen SJ Decl., Exhibit 29; and (4) the Final Summary Report of the Firearms Discharge Review Board regarding the Bah incident, including findings and recommendations. Cohen SJ Decl., Exhibit 18.

Throughout discovery in this action, the Defendants broadly applied a designation of "confidential" to many of the documents they produced. Although Plaintiff saw no basis for this in most instances, Plaintiff awaited the long anticipated motion for summary judgment to vindicate the presumption of public access to these documents in order to avoid delay and in the interest of judicial economy. With the filing of this motion, Defendants appear to concede the frivolity of many of their prior designations of "confidentiality." Of the fifteen (15) exhibits annexed to the Cohen SJ Declaration that were originally marked as confidential by the Defendants, only four (4) are the subject of this motion to seal. Plaintiff takes this as a waiver of the prior confidential designations of the documents that are not now included in the instant

motion, but will await the Court's decision and order prior to acting upon this assumption by filing said exhibits on ECF. The four subject documents were submitted as exhibits to Plaintiff's opposition to Defendants' motion for summary judgment because they are relevant and admissible evidence in regard to substantive legal issues before the Court.

Unfortunately, before turning to the substance of the instant motion, Plaintiff must address Defendants' gross mischaracterizations of Plaintiff's response to Defendants' request that the Plaintiff's Rule 56.1 Counterstatement be removed from the docket, redacted and then re-filed. Garman Decl. ¶¶ 13–15; Defendants' Motion of Law in Support of Motion to Seal, ECF No. 162, p. 5–6 ("Def. MOL"). As confirmed by emails annexed to the Cohen Declaration, submitted here with, Plaintiff was immediately responsive to Defendants' request which ultimately could not be acquiesced to based on ECF rules and instructions from this Court. Emails between Counsel are annexed to Cohen Declaration as Ex.1.

## FACTS RELEVANT TO THE MOTION TO SEAL

A full submission of the facts has been provided in the Plaintiff's opposition to Defendants' motion for summary judgment. However, certain facts that specifically relate to the documents that are the subject of this motion to seal are worth reiterating to demonstrate their relevance. On September 25, 2012, Hawa Bah called 911 to request an ambulance to assist her in taking her son to the hospital. Plaintiff's 56.1 Counterstatement, ECF No. 140, ¶¶ 298–301 ("Counterstatement"). When instead of an ambulance, police arrived, Mrs. Bah told them she had not called the police and asked them to leave. *Id.* ¶¶ 303–304. She was told that in New York when you call an ambulance the police arrive first and if they see someone who is sick they call an ambulance. *Id.* ¶ 305. After an initial response by patrol officers, a team from the NYPD's Emergency Services Unit (ESU) responded and took control of the scene. The incident ended

after Mr. Bah's door was breached, two Tasers and an Arwen less lethal shotgun discharged, and three ESU members discharged their service weapons, resulting in the fatal shooting of Mr. Bah. *Id. passim*. At the moment that ESU breached Mr. Bah's door and he was fatally shot, members of the NYPD's Hostage Negotiation Team were standing at the bottom of the stairs leading to Mr. Bah's apartment with one member in tactical gear ready to go upstairs to attempt to communicate with Mr. Bah through his doorway. *Id.* ¶¶ 385–390.

Members of the ESU attend a specialized training school that includes a five (5) day Emergency Psychological Technician (EPT) course in regard to handling situations involving emotionally disturbed persons. *Id.* ¶ 308. It was intertwined with the EPT training that it becomes the role of the Hostage Negotiation Team (HNT) to attempt to gain communication with an EDP subject. *Id.* ¶ 309. The specialized training school curriculum includes training regarding the use of Tasers and Arwens and other less lethal delivery systems. *Id.* ¶ 310. The curriculum includes training in how to handle non-compliant emotionally disturbed persons who were barricaded. *Id.* ¶¶ 312–314. However, significant to substantive legal issues in this case, it is noted that Lt. Licitra, the ESU supervisor during the Bah incident, testified that he received no training regarding what to do if an EDP refuses to open his door. *Id.* ¶ 316.

NYPD Patrol Guide Procedure 212-38 sets forth the procedures to be followed in hostage/barricaded persons situations and the role of HNT in such situations. *Id.* ¶¶ 343–348. The NYPD's Hostage Negotiations Organizational and Tactical Guide (HNT Manual) elaborates upon the procedures referenced in Procedure 212-38, including that the principles developed in the manual for hostage situations are also applicable to barricaded emotionally disturbed persons. *Id.* ¶¶ 34–350, 355, 362–363, 365–366.

NYPD Patrol Guide Procedure 216-05 sets forth procedures to be followed in regard to the handling of unusual incidents involving aided cases, *to wit*, "Mentally Ill or Emotionally Disturbed Persons". *Id.* ¶ 395–401. It states, *inter alia,* that the ESU supervisor on the scene must report to and confer with the ranking patrol supervisor on the scene and that the Commanding Officer/Duty Captain assume command, including firearms control and directing whatever further action is necessary, including the use of negotiators. *Id.* ¶¶ 398–401.

Following the shooting of Mohamed Bah, the NYPD conducted internal investigations of the incident, including a Firearms Discharge Review Board, ("FDRB"), which resulted in the issuance of three reports. The initial FDRB report is dated September 25, 2012. The final report was issued on December 16, 2013. The Chief of Police then sent a "Final Summary Report" to the Police Commissioner on April 29, 2014 which included a summary of the findings and recommendations. The Final Summary Report concluded that the ESU supervisor on the scene, Lt. Licitra, should not have partially opened the door for the purpose of inserting a pole camera, that Mr. Bah was isolated and contained, and there was no rush to make contact with him. The Final Summary Report also concluded that, according to department guidelines, Lt. Licitra should have conferred with the duty captain prior to breaching Mr. Bah's door. The Final Summary Report also made note that there were occasions in the past wherein ESU attempted to make partial door breaches to insert cameras and the emotionally disturbed person has charged the door. The Chief of Police recommended, and the Police Commissioner approved, that Lt. Licitra receive charges and specifications and a letter of instruction for actions he took during the Bah incident. *Id.* ¶¶ 648-652. A letter of instruction was issued to Lt. Licitra on June 24, 2014. *Id.* ¶¶ 652-654. The Final Summary Report and Letter of Instruction are two of the four documents the Defendants seek in this motion to permanently seal from public view.

# ARGUMENT

## I. LEGAL STANDARD

The Second Circuit Court of Appeals identified a common law and First Amendment presumption of public access to court documents. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119, 124 (2d Cir. 2006). To determine whether a document should be revealed to the public, the Second Circuit identified that a court must (1) determine that the document is a judicial document; (2) determine the weight of presumption that attaches; and (3) under the common law presumption, balance the weight of the presumption against other considerations, or under the First Amendment standard, determine whether "higher values" demand sealing. *Id.* at 119–120, 124.

## II. ALL OF THE DOCUMENTS MEET THE FIRST PRONG OF THE *LUGOSCH* TEST

### a. The ESU Course Outline, HNT Tactical Guide and Letter of Instruction Comprise Judicial Documents

Defendants assert that the ESU Course Outline, HNT Tactical Guide, and Letter of Instruction are not judicial documents. Def. MOL p. 9. Defendants assert that these are not judicial documents because they "are not cited to or otherwise discussed" in Plaintiff's Memorandum of Law in opposition to Defendants' motion for summary judgment and this evinces their lack of relevancy to any substantive legal issues presented in this case. Defendants' assertions are proffered without either legal or factual foundation and fly in the face of the Second Circuit's clearly set forth criteria in *Lugosch* for determining what constitutes a judicial document. 456 F.3d at 119–120.

Under the first step in the *Lugosch* test, to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial

process. *Id.* at 119. Where, as here, exhibits are clearly crucial to the performance of the judicial function, and are useful in the judicial process, there is a presumptive right of access by the public. *Id.* "The locus of the inquiry is, in essence, whether the document is 'presented to the court to invoke its powers or affect its decisions.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Amodeo II")).[1] In addition, the Second Circuit has stated that, "Applying this standard, we have determined that a report submitted to a court in connection with a summary-judgment motion is entitled to a strong presumption of access. Since such a document is the basis for the adjudication, only the most compelling reasons can justify sealing." *Bernstein,* 814 F.3d at 142 (citations and internal quotation marks omitted).

Defendants concede, and it is amply demonstrated above in the recitation of relevant facts, that the disputed documents were referenced extensively in Plaintiff's Rule 56.1 Counterstatement of Facts. Contrary to Defendants' repeated protestations, there is no requirement that the relevance of all exhibits be established through particularized arguments set forth in a memorandum of law and, notably, Defendants have provided no case citing such an absurd proposition. Simply put, some documents, such as those disputed here, are so clearly relevant to the underlying substantive legal issues that no explanation or argument is required in an accompanying memorandum of law. All of these disputed documents are directly relevant to an inquiry into whether the individual Defendants acted "reasonably" pursuant to the Fourth Amendment in their entry into Mr. Bah's apartment and use of less lethal and lethal force against him, as well as in determining "reasonableness" for purposes of determining entitlement to

---

[1] As Defendants distinguished between *United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995) and *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) as *Amodeo I* and *Amodeo II*, Plaintiff adopts this form for consistency even though Plaintiff does not cite to *Amodeo I*.

qualified immunity. The ESU specialized training documents and HNT manual set forth what these defendants were purportedly trained to do to handle a barricaded EDP situation and therefore provide a useful yardstick by which to measure the reasonableness of what they in fact did during the Bah incident. The Letter of Instruction is direct evidence that the NYPD Chief of Police and Police Commissioner did not find certain elucidated actions by the ESU Supervisor, Lt. Licitra, to be reasonable. Their view is indisputably helpful and relevant to a judicial inquiry of reasonableness in the constitutional sense. Finally, it is relevant to the claim of municipal liability under a deliberate indifference analysis that individual defendants, particularly Lt. Licitra, denied receiving training in certain procedures set forth in the ESU and HNT documents.

**b. The Documents in Their Entirety and the Cited Pages Comprise Judicial Documents**

Defendants maintain that none of the four disputed documents comprise judicial documents but then assert, should the Court disagree, that "at a very minimum, only those specific pages to which plaintiff cites in her Rule 56.1 Counterstatement can even arguably be construed as such." Def. MOL p. 11–12. Again, Defendants cite to *no* authority to support their proposition that litigants and courts are required to take such an unreasonably burdensome surgical approach in regard to the annexation of exhibits to filings proffered for a motion for summary judgment. Such parsing would be untenable for both the drafters and readers of motions. Such a requirement would impermissibly shift the burden from the sealing proponent to demonstrate a basis for setting aside the presumption of access to documents submitted to a Court in contravention of the strong presumption of access that has attached under both the common law and the First Amendment. *Ottati v. City of Amsterdam*, 2010 U.S. Dist. LEXIS 145010, *9 (N.D.N.Y. Jan. 25, 2010).

## III. THE PRESUMPTION OF ACCESS WEIGHS IN FAVOR OF MAKING THE ESU COURSE OUTLINE, THE HNT TACTICAL GUIDE AND THE LETTER OF INSTRUCTION PUBLIC

### a. A Presumption of Access to Documents Referred to in a Party's Papers in Support or Opposition to Summary Judgment Exists and is Strong

The second prong of the three part *Lugosh* analysis is the Court's determination of the "weight of the presumption" to be afforded, i.e., whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances or whether the presumption is a low one that amounts to little more than a prediction of public access absent a countervailing reason or whether the presumption is somewhere in between. *Lugosh*, 435 F.3d at 119 (citing *Amodeo II,* 71 F. 3d at 1048). Defendants assert that "given these documents irrelevance to the parties' claims and defenses in this matter" the weight of a presumption of public access here is "plainly minimal." Def. MOL p. 13–14.

These disputed documents were extensively cited in Plaintiff's 56.1 Counterstatement because they are highly relevant in determining the reasonableness of the individual Defendants' actions and the alleged deliberate indifference of the City. The information they contain goes to the heart of the Plaintiff's Fourth Amendment, municipal liability, wrongful death and negligent training claims. Defendants rely on *Lugosch v. Pyramid Co.* and *Amodeo II,* to say that the weight of presumption is weak because these documents move away "from matters that directly affect adjudication." Def. MOL p. 13. Plaintiff obviously disagrees.

This case involves substantive legal issues arising from how the individual Defendant officers either did, or did not, implement NYPD procedures as set forth in the HNT practical Guide and the ESU course outline. Defendants contend the HNT guide is irrelevant because none of the individual Defendants are members of HNT. Def. MOL p. 14. However, it is undisputed

that members of HNT were summoned to the scene as required by NYPD procedures, and were poised and prepared to ascend to the fifth floor from the fourth floor to begin communications with Mr. Bah when Lt. Licitra ordered the door breached. The significance of the failure of Lt. Licitra to allow HNT's involvement, and arguably to affirmatively prevent it, is highly relevant to whether Lt. Licitra's actions were reasonable and whether he discharged his responsibilities as a supervisor in a grossly negligent or reckless manner. The HNT guide provides relevant information from which a juror could draw reasonable inferences as to the particularized skills possessed by HNT members, and the different manner in which they would have handled the interaction with Mr. Bah.

The Defendants' assertion of irrelevancy with regard to the Letter of Instruction issued to Lt. Licitra, which includes the recommendation of the Chief of Police and approval of the Police Commission, is arguably frivolous and certainly without merit. The Letter of Instruction, and the underlying basis for it as delineated in the Final Summary Report, is essentially an admission by the final policymaker, the Police Commissioner, that certain actions Lt. Licitra took during the Bah incident were unreasonable. The trier of fact, with the appropriate legal instructions from the Court, is the appropriate arbiter of whether the unreasonableness of Lt. Licitra's actions rises to "unreasonableness" in the constitutional sense pursuant to the Fourth Amendment or for qualified immunity purposes. But at this juncture, the Letter of Instruction renders it indisputable that Lt. Licitra failed to follow NYPD procedures during the Bah incident. The fact that Lt. Licitra broke protocol shows he was acting unreasonably and is evidence to be considered by the trier of fact in determining whether his actions were a proximate cause of the Fourth Amendment violations alleged and/or whether Mr. Bah's clearly established rights were violated.

Also without merit is Defendants' contention that reference to this finding by the NYPD that Lt. Licitra violated internal procedural guidelines would only confuse a jury and should not be admitted under Federal Rules of Evidence 402 and 403.They cite no cases where such a piece of evidence was deemed inadmissible. Courts may only exclude relevant evidence if its probative value is *substantially outweighed* by, among other things, a danger of confusing the issues or misleading the jury. Fed. R. Evid. 403 (emphasis added). "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *SEC v. McGinnis*, 2015 U.S. Dist. LEXIS 127406, *41 (D. Vt. Sept. 23, 2015) (citing *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980)); *see also Hines v. Consol. Rail Corp.*, 926 F.2d 262, 274 (3d Cir. 1991) (warning that "excluding evidence under Fed. R. Evid. 403 at the pretrial stage is an extreme measure"). Lastly, "the probative value of the proffered evidence depends largely on whether or not there is a close parallel between the [acts] charged and the acts shown." *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (internal quotation marks omitted). Introduction of this letter would not confuse a reasonable jury. Even if it did, that risk does not substantially outweigh admission of the letter where the letter is relevant, tends to prove an element of the claim, and there is a parallel between what the letter explains and what the plaintiff alleges happened. Plaintiff respectfully submits that the Letter of Instruction is crystal clear in what it communicates regarding Lt. Licitra's failure to follow NYPD procedures during the Bah incident and no reasonable juror would find it to be confusing.

**b. Factors Weigh Heavily in Favor of Public Access to the Documents**

Defendants assert the law enforcement privilege justifies keeping the documents at issue under seal in their entirety. Defendants bear the burden of making a "substantial threshold

showing" of *what* law enforcement or privacy interests would be harmed, *how* the disclosure of specific documents would cause the harm, and *how much* harm would result. *Coleman v. County of Suffolk*, 2016 U.S. Dist. LEXIS 45035, *16–18 (E.D.N.Y. Mar. 31, 2016) (citing *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988)). Plaintiff disputes that Defendants have carried this burden because these documents do not contain information that would compromise the effectiveness or safety of police officers. At the very least, the Letter of Instruction, the relevant sections of the HNT guide and ESU course outline relied upon by Plaintiff (pages iii, 1, 13 and 16 of the HNT guide, and pages 12 and 15 of the ESU course outline), and the entire Final Summary Report of the Firearms Discharge Review Board, do not contain information sensitive enough to overcome the strong presumption in favor of access. Again, documents relied upon by the court in deciding upon a motion for summary judgment "should not remain under seal *absent the most compelling reasons.*" *Lugosch*, 435 F.3d at 123 (internal quotations marks omitted) (emphasis in original). The reason for this strong presumption is the public's interest in "the opportunity to assess the correctness of the judge's decision." *Id.* The balancing of the public interest would be achieved by the court allowing access to the specific sections relied upon in deciding whether Mr. Bah's death resulted from the unreasonable use of force by NYPD officers.

Regarding the Letter of Instruction, Defendants argue weakly that the officer's privacy interest justifies hindering public access to documentation of wrongdoing by a civil servant. Defendants acknowledge New York Civil Rights Law § 50-a is inapplicable here. (Def. Motion to Seal p. 19). Section 50-a is only meant to prevent "vexatious investigation into irrelevant collateral manners" by limiting the ability of criminal defense counsel to embarrass officers during cross-examination. *Smith v Town of Stony Point*, 2014 U.S. Dist. LEXIS 77035, *7 (S.D.N.Y. May 22, 2014) (citation and quotations marks omitted). This narrow exemption for

personnel files does not apply to the Letter of Instruction because it is central to the substantive issues in the case, and the higher value at stake here is the public confidence in the police to properly investigate, re-train and discipline officers who are found to have violated NYPD procedures, with deadly consequences. Because Letters of Instruction concern "on-the-job conduct of police officers rather than matters in their personal lives, the privacy interests at issue here, though not inconsequential, are limited in view of the role played by the police officer as public servant who must be accountable to public review." *Floyd v. City of New* York, 739 F. Supp. 2d 376, 385 (2010) (citation and internal quotation marks omitted). The court in *Coleman* held that the Internal Affairs Unit investigation and report submitted in support of plaintiff's opposition to the defendants' motion for summary judgment must be disclosed as defendants failed to meet their burden in demonstrating that the law enforcement privilege attached. 2016 U.S. Dist. LEXIS 45035 at *16–18. The court in *Natl. Congress for Puerto Rican Rights ex rel. Perez v City of New York* held that the balance of relevant factors dictated disclosure of memoranda regarding the police unit's compliance with certain administrative procedures, as well as, in redacted form, records relating to command discipline, charges and specifications, and CCRB and IAB records. 194 F.R.D. 88, 96–97 (S.D.N.Y. 2000). The public has a right to know whether the NYPD's own investigation acknowledges mistakes and/or wrongdoing and what, if any, remedial measures were taken in response.

Public access to judicial documents is of utmost importance because without it "the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Lugosch*, 435 F. 3d at 119 (internal quotation marks omitted). The *Floyd* court held that an important factor favoring disclosure is whether a case involves "a matter of public concern such as civil rights [because] the public has a profoundly important interest in giving

force to the federal civil rights law, and in reasonable transparency from law enforcement agencies." *Floyd*, 739 F. Supp. 2d at 381–382. There can be no dispute that the use of force by police, particularly during aided calls involving a person having a mental health crisis, is an issue of public interest and import. Recent events reported in the media, including this case, demonstrate that such public confidence in the mechanisms by which police officers are held accountable for unreasonable use of force is dangerously flagging and requires transparency: "it is of special import that suits brought under [§ 1983] be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden." *Id.* (quoting *Wood v. Breier*, 54 F.R.D. 7, 10–11 (E.D. Wis. 1972)).

It is worth noting that within 24 hours after Mr. Bah was killed the NYPD released information to the press justifying the actions of the officers involved. Through discovery and depositions it is now clear that those statements were largely inaccurate and molded to wrongly influence public opinion regarding the police officers' lack of liability, and Mr. Bah's alleged culpability, in his death. Balancing the important issues addressed in this case and enlightened by these documents, and the lack of information contained within them that would infringe upon the effectiveness or safety of police officers, the presumption of access strongly tilts in favor of disclosure.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Defendants' motion to seal be denied in full and an Order issued that Plaintiff file all exhibits referenced in her opposition to Defendants motion for summary judgment on ECF within three days (3) of the issuance of the Court's order and granting such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
June 16, 2016

Respectfully submitted,

**NEWMAN FERRARA LLP**

By: ______________________

Debra S. Cohen
dcohen@nfllp.com
Randolph M. McLaughlin
rmclaughlin@nfllp.com
1250 Broadway, 27th Floor
New York, New York 10001
Tel: 212-619-5400
Fax: 212-619-3090