# NEWMAN FERRARA LLP

1250 Broadway, 27th Fl., New York, NY 10001
tel. 212-619-5400 • fax 212-619-3090
www.nfllp.com

November 5, 2017

**Via ECF**
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York   10007

Re: <u>Bah v. City of New York, et al.</u>
13-cv-6690 (PKC)(KNF)

Your Honor:

We represent the Plaintiff in the above-referenced action and write in response to the two letters filed by the Defendants, on November 3, 2017, in regard to the clothing Mohamed Bah was wearing when he was shot and killed. Dkt. Nos. 242 and 243. As the Court is aware, Plaintiff previously filed a motion for sanctions against the Defendants for the spoliation of this evidence, which was denied. Defendants have now made a mid-trial revelation that the "NYPD has obtained the vouchered property from the storage facility and that it can be made available for inspection at a mutually convenient date and time." In light of the long, well documented history of Defendants' denial of possession custody or control of the clothing, and the prejudice this has inflicted, Plaintiff respectfully requests the Court issue sanctions against the Defendants pursuant to FRCP 37(c)(1).

As background, Plaintiff first became aware that the Defendants' myriad of representations over the past four years regarding the unavailability of the clothing might be inaccurate during a telephone call with a pathologist from the Medical Examiner's office. Plaintiff arranged the telephone call after being advised by the Defendants the name of the pathologist who had been assigned to testify at trial regarding the autopsy performed on Mr. Bah. The telephone call took place Friday, November 3, 2017 at 4:30 p.m.. The first question Plaintiff's counsel asked the pathologist was whether it was consistent with the OCME's practice to return the clothing of a homicide victim to the family, via the mortuary, with the deceased's remains. The pathologist advised us it was not. He further advised that he had recently investigated and determined that the mortuary release form for Mr. Bah had mistakenly stated that his clothing was released with his remains. The pathologist further advised that the clothing had been held in the OCME's evidence storage facility for one year and then released to the NYPD. He forwarded to Plaintiff's counsel an email he had received at 11:54 a.m. that morning from the OCME's Evidence Director confirming the transfer of the clothing to the NYPD. OCME Email annexed hereto as Exhibit 1. Approximately one hour later, Defendants' counsel called to "advise us" of the change in status of the clothing and that they would be filing a letter with the Court. As noted, Plaintiff's counsel had just independently learned this information from the OCME shortly before the call from the Corporation Counsel's office.

NEWMAN FERRARA LLP

Hon. P. Kevin Castel
November 5, 2017
Page 2 of 4

      To assist the Court in determining whether sanctions are appropriate, set forth herein is the history of Plaintiff's efforts to gain access to Mr. Bah's clothing and Defendants ever changing responses as to why the clothing was not in their possession, custody or control.

      On March 14, 2013, Plaintiff sent a preservation letter to the Corporation Counsel demanding the preservation *inter alia* of "all clothing and/or any tangible items collected from Mr. Bah's person." Preservation Letter annexed hereto as Exhibit 2.

      On June 30, 2015, Plaintiff served a Fourth Request for the Production of Documents, Third Set of Interrogatories, and Second Demand for Notice of Inspection which included *inter alia* a request to inspect "[t]he clothes worn by Mr. Bah when he was shot during the incident." Defendants responded on September 17, 2015, stating "the clothing worn by decedent when he attacked the ESU officers is not within defendants' possession, custody or control." Relevant Portions of Defendants' September 17, 2015 Responses and Objections annexed hereto as Exhibit 3.

      On September 24, 2015, Plaintiff sent a deficiency letter to Defendants in response to the assertion that Mr. Bah's clothing was "not within defendants' possession, custody or control" based on photographs taken at Mr. Bah's autopsy which included his clothing. September 24, 2015, Deficiency Letter annexed hereto as Exhibit 4. A meet and confer was held on September 28, 2015, during which Defendants' counsel advised that Mr. Bah's clothes had been removed at, and discarded by, the hospital. Plaintiff then provided Defendants with photographs of the clothing taken after Mr. Bah was transferred from the hospital to the OCME. Email to Defendants Counsel annexed hereto as Exhibit 5.

      On September 29, 2015, Plaintiff sent a letter to Magistrate Judge Kevin N. Fox requesting a discovery conference. Mr. Bah's clothing was one of the issues that needed to be addressed. Plaintiff's Letter Requesting Discovery Conference annexed hereto as Exhibit 6. A telephonic discovery conference was held on October 20, 2015, during which Defendants' counsel stated, "we have done a good faith search for the clothing and my understanding is it was never vouchered and was destroyed." Excerpt from Discovery Conference annexed hereto as Exhibit 7.

      On April 25, 2016, Plaintiff filed a Motion for Sanctions For Spoliation of Evidence. Plaintiff asserted *inter alia* that Defendants had violated their duty to preserve Mr. Bah's clothing. Plaintiff's motion included a Declaration from Dr. Michael Baden regarding the prejudice the clothing's unavailability caused to Plaintiff. Declaration of Dr. Baden annexed hereto as Exhibit 8. Defendants disputed Plaintiff's assertions by proffering a Mortuary Release Form and stating that the clothing was returned to "the custody of the funeral director, pursuant to the authorization of Mr. Bah's mother and nearest relative Hawa Bah." Defendants called Plaintiff's motion for sanctions "frivolous" because the clothing had been "returned to Bah's family shortly after his death." Relevant Excerpts from Defendants Mem. of Law Dkt. No. 147, p. 4-5, 7 annexed hereto as Exhibit 9.

NEWMAN FERRARA LLP

Hon. P. Kevin Castel
November 5, 2017
Page 3 of 4

On June 29, 2017, a hearing on the spoliation motion was held before this Court. During the hearing, Defendants objected to questions being put to the witness regarding the storage of clothing of homicide decedents as irrelevant. The Court overruled the objection and allowed the witness to answer. Tr. 32-34. Plaintiff then set forth the argument that the return of Mr. Bah's clothing to the mortuary constituted spoliation. Tr. 100-102. Based on the information then available to the Court as to what had happened to Mr. Bah's clothing, the motion for sanctions for spoliation of the clothing was denied. Tr. 125-126. Spoliation Hearing Transcript Excerpts annexed hereto as Exhibit 10.

Defendants have now provided new facts regarding the fate of Mr. Bah's clothing, most notably that it has been in the possession, custody or control of the Defendants all along despite their repeated representations to the contrary. As the Court observed during the spoliation hearing, "Facts are stubborn things." Plaintiff respectfully requests that the Court require the Defendants to explain more fully the markedly changed facts and circumstances that lead us to this eleventh hour revelation.

Here, the record reveals that Plaintiff sought the production of Mr. Bah's clothing that he wore at the time of the shooting incident. The Defendants' counsel asserted that they had conducted a good faith search and contended that the evidence Plaintiff sought had not been taken into custody or control by the NYPD or vouchered. Now, in the midst of trial, the Defendants belatedly advised the Court that, in fact, the clothing was in their custody and had been vouchered by the NYPD during the discovery phase of this litigation. Given the varying accounts and representations made by Defendants regarding the clothing, we would request that the Court conduct an inquiry to determine what search had been made for the clothing, when was that search conducted, how was that search conducted, and by whom. As demonstrated in the attachments hereto, numerous statements were made regarding the disposition of the clothing. First, we were told that it had been destroyed by the hospital where Mr. Bah was taken after the shooting. Second, we were told that the NYPD never had custody of the clothing and it had not been vouchered. Third, we were told that the clothing had been released to the mortician. Finally, at the eleventh hour, we were told that the clothing in fact had been vouchered and was in the NYPD's custody. What did the Defendants and their counsel know about the status of Mr. Bah's clothing when these representations were being made and when did they realize that these representations were inaccurate? Of particular concern is why for four years the clothing could not be located but it apparently took only one hour on Friday, between the time the two letters were filed, to ascertain the clothing's whereabouts in an NYPD storage facility? We have requested that Defendants' counsel provide additional information regarding the chain of custody of the clothing but we have not received any additional documents as of the filing of this letter. Email correspondence with Defendants' Counsel annexed hereto as Exhibit 11.

In light of the Defendants' failure to disclose relevant evidence during the discovery process, despite Plaintiff's repeated efforts to obtain access to Mr. Bah's clothing in order to have her expert, Dr. Michael Baden, conduct an inspection and examination of same, sanctions under F.R.C.P. Rule 37(c)(1) are appropriate. In acting pursuant to Rule 37 or by exercising its

inherent powers, the district court has wide discretion in determining what sanctions are appropriate for a party who has engaged in discovery abuses. *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002). Rule 37(c) is designed to deter a party from sandbagging an opponent at trial with information the opponent did not know existed. *Lee Val. Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 262 (W.D.N.Y. 2013). Under the rule, if a party fails to provide information as required by F.R.C.P. Rule 26(e), sanctions may be considered by the Court. Under Rule 26(e)(1)(A), a party who has responded to a request for production must supplement or correct its disclosure or response in a timely fashion if the party learns that its response is incomplete or incorrect. Under Rule 37(c)(1) the Court has a number of options for the failure to disclose: payment of reasonable expenses, including attorney's fees, caused by the failure; informing the jury of the party's failure; and appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). We would suggest that, one or more, of the following Rule 37 sanctions may be appropriate: a direction that certain matters be taken as established; prohibiting the Defendants from supporting designated defenses or from introducing designated matters in evidence; striking pleadings in whole or in part; and rendering a default judgment against the disobedient party.[1]

In light of the foregoing, we would request that the Court consider on November 6, 2007, at 9:30, how it wishes to proceed with respect to the issues raised herein.

Respectfully Submitted,

NEWMAN FERRARA LLP

Debra S. Cohen

cc: All counsel of record (*via ECF*)

---

[1] In considering what if any sanctions are appropriate, the Court is asked to consider the City's "oft-demonstrated cavalier attitude toward discovery obligations" and the need to "impress upon the City the potential for adverse consequences resulting from 'inexcusably lax' responses to discovery orders." December 17, 2009 Letter to New York Law Journal from Presiding Justice of the Appellate Division, First Department annexed hereto as Exhibit 12.